*Decision will be entered under Rule 155.*

SILAS V. CROSS AND MILLIE CROSS, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

SILAS A. CROSS AND FRANCINE V. CROSS, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 11879–78, 11880–78.    Filed September 27, 1984.

---

*Frederick O. Frohmader, Charles J. Herrman,* and *Norman L. Margullis,* for the petitioners in docket No. 11879–78.

*Charles J. Herrman* and *Norman L. Margullis,* for the petitioners in docket No. 11880–79.

*Thomas N. Tomashek,* for the respondent.

### OPINION

WILBUR, *Judge:* In these consolidated cases, respondent determined the following deficiencies and additions to tax in petitioners' Federal income taxes:

| Docket No. | Petitioner | Year | Deficiency | Sec. 6653(a)[1] addition to tax |
|---|---|---|---|---|
| 11879–78 | Silas V. and Millie Cross | 1976 | $27,233 | $1,362 |
| 11880–78 | Silas A. and Francine V. Cross | 1976 | 542 | 27 |

After concessions, the only issue remaining for our decision is whether income earned by an enrolled member of the Puyallup Indian Nation from the operation of a smokeshop upon land held in trust by the United States is subject to Federal income taxation.[2]

This case was submitted under Rule 122, Tax Court Rules of Practice and Procedure. All facts have been stipulated. The stipulation of facts and attached exhibits are incorporated herein by this reference.

The petitioners in each of these cases are husband and wife. Petitioner Silas V. Cross and petitioner Silas A. Cross are father and son and both are enrolled members of the Puyallup Indian Nation. All petitioners resided in Tacoma, Pierce County, WA, within the boundaries of the Puyallup Indian Reservation when the petitions herein were filed.

Petitioner Silas V. Cross (Cross) is the beneficial owner of land held in trust by the United States of America (trust

---

[1]All section references are to the Internal Revenue Code of 1954 as amended and in effect during the taxable year in issue.

[2]Respondent conceded that petitioners were not liable for the addition to tax under sec. 6653(a) for the year 1976.

land).[3] The original patent granting beneficial ownership of the trust land was issued to his grandfather on January 30, 1886, under the provisions of the Medicine Creek Treaty of 1854 (Medicine Creek Treaty), 10 Stat. 1132.

The trust land also falls under the jurisdiction of the General Allotment Act of 1887, 24 Stat. 388, 25 U.S.C. sec. 331 et seq. (1982). The purpose of the General Allotment Act is to preserve the value of land in trust until the Secretary of the Interior determines that the individual allottee is competent to hold title to the land in fee simple.[4]

Cross operates the Cross Smokeshop on 0.62 acres of the original patent allotted to his grandfather in 1886. In 1976, the fair rental value of the 0.62 acres was $6,500, based upon the rental value of the property for use in the operation of a smokeshop or other similar commercial enterprise, the highest and best use of this particular property.

In 1976, the net profit received by Cross from operation of the smokeshop was $41,687. This income resulted from the sale of cigarettes, other tobacco products, and merchandise sold in the smokeshop. The son (petitioner Silas A. Cross) received $1,899 in wages for working at the smokeshop in 1976. None of the petitioners reported these amounts as income on their respective joint 1976 Federal income tax returns.

Respondent determined that both the smokeshop income and the wages paid to the son were includable in petitioners' respective gross incomes.

Section 61 defines gross income to include "all income from whatever source derived." It is well established that the income of Indians is taxable under this section, "unless an exemption from taxation can be found in the language of a Treaty or Act of Congress." *Commissioner v. Walker*, 326 F.2d

---

[3]Petitioner has restricted title to this property, meaning that he is "noncompetent" to alienate or encumber the property without permission of the Secretary of the Interior. Generally, petitioner is classified as a noncompetent ward of the United States. See *Stevens v. Commissioner*, 452 F.2d 741, 742 n. 1 (9th Cir. 1971), affg. in part and revg. in part 52 T.C. 330 (1969), Supplemental Opinion 54 T.C. 351 (1970).

[4]The purpose of the General Allotment Act is to protect Indians' interest in their land and "to prepare the Indians to take their place as independent, qualified members of the modern body politic." *Board of Commissioners v. Seber*, 318 U.S. 705, 715 (1943). The allotted parcels are held in trust until a time when the property is transferred to the allottee, "in fee, discharged of said trust and free of all charge or encumbrance whatsoever." General Allotment Act of 1887, 24 Stat. 388, 25 U.S.C. sec. 348 (1982). Thus, the General Allotment Act seeks to preserve the value of the allotted land until the allottee is judged competent to handle his own affairs.

261, 263 (9th Cir. 1964); *Jourdain v. Commissioner*, 71 T.C. 980 (1979), affd. 617 F.2d 507 (8th Cir. 1980); *Hoptowit v. Commissioner*, 78 T.C. 137 (1982), affd. 709 F.2d 564 (9th Cir. 1983). The mere fact that petitioners are Indians will not preclude them from being liable for the payment of income tax. *Choteau v. Burnet*, 283 U.S. 691 (1931); *Superintendent v. Commissioner*, 295 U.S. 418 (1935). In order to prevail, petitioners must point to "express exemptive language in some statute or treaty" showing that they need not include amounts in their gross income. *United States v. Anderson*, 625 F.2d 910, 913 (9th Cir. 1980); *Karmun v. Commissioner*, 82 T.C. 201, 204 (1984).[5] See *Welch v. Helvering*, 290 U.S. 111 (1933).

Petitioners have failed to show an express exemption in any treaty or act of Congress. Thus we must agree with respondent that income from the smokeshop, as well as wages paid for working in the smokeshop, constitutes taxable income under section 61.

Petitioners' primary contention is that the Medicine Creek Treaty is a contract between the United States and the Puyallup Indian Nation reserving by implication the power of taxation in the Puyallup Indian Nation. Petitioners rely on two principles of contract construction: language is to be construed most strongly against the entity responsible for it; and, where items are specified in detail in a contract, other items of the same general character are excluded by implication on the ground that the specific terms express the meaning of the parties. C. Sands, Sutherland Statutory Construction (4th ed. 1972). We do not find these general principles of contract law to be applicable to this case.

The Medicine Creek Treaty, 10 Stat. 1132, in pertinent part states: "Article 12. The said tribes and bands finally agree not to trade at Vancouver's Island or elsewhere out of the dominions of the United States." Petitioners ask us to conclude that this geographical restriction in article 12 is the only trade limitation which was intended by the United States and the Puyallup Indian Nation when the treaty was executed. They argue that taxing the income from the smokeshop would be a further constraint on trade, not allowed under the treaty.

---

[5] Cf. *Swiger v. Commissioner*, T.C. Memo. 1984–228 (where the Court restated the requirement of the presence of express language to exempt smokeshop income from taxation).

We reject this interpretation as not arising from the plain language of article 12.

At the time the Medicine Creek Treaty was entered into, the Federal income tax did not yet exist. D. Posin, Federal Income Taxation, sec. 1.01, at 1 (1983).[6] The parties surely did not intend a geographical trade limitation to restrict the taxing authority of the United States to impose a tax not in existence.

Moreover, we cannot find that petitioners have been exempted from the tax by implication. *Mescalero Apache Tribe v. Jones*, 411 U.S. 145, 156 (1973); *Fry v. United States*, 557 F.2d 646, 649 (9th Cir. 1977); *Jourdain v. Commissioner*, 71 T.C. at 990. Any exemption from taxation for Indians must be expressly stated in a treaty or act of Congress. *United States v. Anderson, supra.* The Medicine Creek Treaty simply does not provide petitioners with an express restriction on the ability of the United States to tax the profits arising from trade carried out on trust land. *Earl v. Commissioner*, 78 T.C. 1014 (1982).

The General Allotment Act, 25 U.S.C. sec. 331 et seq., under which jurisdiction the trust land falls, similarly fails to exempt petitioners' income from taxation.[7] In *Squire v. Capoeman*, 351 U.S. 1, 9 (1956), the Supreme Court concluded that there exists within the General Allotment Act, an exemption from taxation of income from land held in trust by the United States, *if* such income is "directly derived" from the land. Quite clearly, income from land is not generally exempt, but only income "directly derived" from the land. The profits from petitioners' smokeshop do not fall within this narrow exemption.

In *Squire v. Capoeman, supra*, a noncompetent Indian contested the inclusion in gross income of amounts derived from the sale of timber growing on land held in trust for him by the United States pursuant to the General Allotment Act. "The land was forest land, covered by coniferous trees from one hundred years to several hundred years old," and "was of little value after the timber was cut." *Squire v. Capoeman, supra* at 4. Quoting an earlier attorney general, that "it is not lightly to be assumed that Congress intended to tax the ward for the benefit of the guardian" (351 U.S. at 8), the Court read the General Allotment Act as exempting from tax income "directly derived" from the land itself, thus exempting the

---

[6]See also *Swiger v. Commissioner, supra.*
[7]See note 4 *supra.*

timber sales proceeds from the capital gains tax. However, this exemption was restricted to income "directly derived" from the land itself. The Court stated that:

Once logged off, the land is of little value. The land no longer serves the purpose for which it was by treaty set aside * * * and for which it was allotted to him. * * * Unless the proceeds of the timber sale are preserved for [the taxpayer], he cannot go forward when declared competent with the necessary chance of economic survival in competition with others. * * * [*Squire v. Capoeman, supra* at 10. Fn. ref. omitted.]

In petitioners' case, the continued use of the land for retail sales from a smokeshop does not decrease the economic value of the land nor impair the capacity of a competent Indian to "go forward * * * with the necessary chance of economic survival." 351 U.S. at 10. In the circumstances before us, the land (along with other capital assets and labor) has been used to produce business income from the smokeshop. Unlike these circumstances, the cases which have applied the "directly derived" exemption involve only situations where there is exploitation of the land itself. *Stevens v. Commissioner*, 452 F.2d 741 (9th Cir. 1971) (income from farming and ranching is tax exempt); *United States v. Daney*, 370 F.2d 791 (10th Cir. 1966) (income from oil and gas leases is tax exempt); *Hayes Big Eagle v. United States*, 156 Ct. Cl. 665, 300 F.2d 765 (1962) (royalties from mineral deposits are tax exempt).

Having found no court which has exempted the income from retail sales from taxation under the authority of the General Allotment Act, we find no reason to do so either. Moreover, this Court has consistently held that income from the sale of cigarettes and tobacco (smokeshop income) is taxable. *Hoptowit v. Commissioner*, 78 T.C. 137 (1982).[8] Our finding of taxability may reduce the profits retained by petitioners, but it does not interfere with either the trade rights granted under the Medicine Creek Treaty, or the intended purpose of the General Allotment Act.[9]

---

[8]Cf. *Comenout v. Commissioner*, T.C. Memo. 1982–40; *Swiger v. Commissioner*, T.C. Memo. 1984–228. See also *Hale v. United States*, 579 F. Supp. 646 (E.D. Wash. 1984), and *Critzer v. United States*, 220 Ct. Cl. 43, 597 F.2d 708 (1979).

[9]Petitioners' additional arguments regarding the applicability of taxing statutes and the constitutional power of Congress to tax Indians are unpersuasive. Reliance on *Elk v. Wilkins*, 112 U.S. 94 (1884), is unfounded and runs contrary to the great weight of decisions which state that general legislative acts of Congress *do* apply to Indians. This, of course, includes the Federal income tax. *F.P.C. v. Tuscarora Indian Nation*, 362 U.S. 99 (1960); *Squire v. Capoeman*, 351 U.S. 1

Petitioners' alternative argument attempts an end run around this formidable line of authority. Petitioners argue that the portion of the smokeshop income allocable to the fair rental value of the unimproved land upon which the smokeshop sits should be excluded as income "directly derived" from the land within the meaning of *Squire v. Capoeman, supra.* Put differently, petitioners argue that the fair rental value for the land of $6,500 is the amount of smokeshop income which is generated from the land itself and is properly excludable. For this indirect construction of income "directly" derived—a construction dramatically extending existing case law—petitioners rely only on dicta from *Critzer v. United States*, 220 Ct. Cl. 43, 597 F.2d 708 (1979).[10]

In effect, petitioners ask us to exclude imputed rent on the land from their smokeshop income on the theory that this imputed rental income is "directly derived" from the land within the meaning of *Squire v. Capoeman, supra.* Aside from the difficult computational and valuation problems involved, we are not willing to assume that this constructed value represents income "directly derived" from the land. Certainly it is a long, long way from the sale of timber in *Squire v. Capoeman, supra*, which the Supreme Court viewed as tantamount to a disposition of the land.[11] Clearly, none of the cases have gone anywhere near as far as petitioners suggest. See *Stevens v. Commissioner, supra* (income from farming and ranching is tax exempt); *United States v. Daney, supra* (income from oil and gas leases is tax exempt); *Hayes Big Eagle v.*

---

(1956); *Jourdain v. Commissioner*, 71 T.C. 980 (1979), affd. 617 F.2d 507 (8th Cir. 1980). In addition, petitioners' argument that the phrase "Indians not taxed," in the Constitution (art. I, sec. 2, cls. 3 & amend. XIV, sec. 2), refers to taxation of Indians by the United States is erroneous. It is well settled that "Indians not taxed" refers only to taxation by the States. It is not to be construed as a restriction on the taxing power of the United States. *Jourdain v. Commissioner, supra; Comenout v. Commissioner, supra.*

[10]The Court of Claims rejected the taxpayer's claim of exemption in *Critzer v. United States, supra*, but went on to state:

"we do not say that the land is not of *some* value in helping create income such as that realized from the operation of a motel. Even the Government admits that it might be appropriate in certain instances to allocate income based upon the relative value of the land vis-a-vis any improvements or services. However, we do not reach this problem of allocation in the matter of Mrs. Critzer. That issue remains for yet another case on another day, since plaintiff has not raised it in the case at bar. [220 Ct. Cl. at 53, 597 F.2d at 714. Fn. ref. omitted. Emphasis in original.]"

[11]"Once logged off," the Court stated, "the land is of little value." *Squire v. Capoeman, supra* at 10.

*United States, supra* (royalties from mineral deposits are tax exempt).

We specifically decline to express any opinion on the results reached on different facts in *Hale v. United States*, 579 F. Supp. 646, 648 (E.D. Wash. 1984). Nevertheless, we agree with the court that:

> The essential basis of *Capoeman* is the protection of the property right of the allottee during the trust period. See *United States v. Anderson*, 625 F.2d 910 (9th Cir. 1980) and *Holt v. Commissioner*, 364 F.2d 38 (8th Cir. 1966), cert. denied 386 U.S. 931 (1967). There is no exploitation of the land itself in this case, nor is its value reduced by the operation of the smokeshop. The plaintiff's argument ignores the word "directly" in the "directly derived" test.

We agree with the *Hale* court that the proper focus is on income *directly* derived from the land, and that to meet this test there must be some exploitation of the land itself. Indeed, if petitioners' imputed rent exclusion is sanctioned, the word "direct" has little meaning, for all income connected in any way with the land would then be "directly derived" from the land. In *Critzer v. United States*, 220 Ct. Cl. at 52, 597 F.2d at 713, the court observed that if "plaintiff were to sit in a telephone booth on her Indian land and sell stocks and bonds by phone from the booth, it would be ludicrous to attempt to argue that any income, so earned, was directly derived from the land." Yet petitioners' imputed rent theory, if sanctioned, would require such a conclusion, and the conclusion would be applicable to a potentially endless variety of businesses. Declining to take through taxation a significant portion of a gain that effects a corresponding diminution of the trust asset is one thing; declining to tax income from repetitive use of the asset effecting no diminution in value is quite another. The former is a breach of faith with Indian citizens; the latter a breach of faith with all other taxpayers, including Indians. For these reasons, we note our agreement with *Hale v. United States, supra*, without further belaboring the additional problems petitioners' theory presents.

*Decisions will be entered under Rule 155.*

Reviewed by the Court.

DAWSON, SIMPSON, GOFFE, WILES, NIMS, SHIELDS, SWIFT, and JACOBS, *JJ.*, agree with the majority opinion.

HAMBLEN, *J.*, dissents.

CLAPP and GERBER, *JJ.*, did not participate in the consideration of this case.

---

CHABOT, *J.*, concurring: I join in so much of the majority's opinion that concludes that petitioners are generally taxable on their smokeshop income. Although I also agree with the majority's conclusion as to petitioner's alternative argument, as applied to the facts of the instant case, I disagree with the majority's analysis.

The broad sweep of the majority's opinion apparently would preclude an exemption for rent received by an Indian beneficial owner of trust land from a smokeshop operator, even if the rent was received solely for the right to use the land (and not, for example, for the building). For the reasons explained in Judge Parker's dissenting opinion, *infra*, I do not believe that is the law.

Nevertheless, in the instant case, no rent was paid to any of the petitioners. Cross' income was from the operations of the smokeshop. Since he leased neither the land, nor the land in combination with anything else, to anyone, there does not appear to be any reason to allocate any part of Cross' smokeshop income to land rental. I do not believe that we have any general authority in the law to impute rental income to the owner of an asset merely because the owner also uses the asset. The instant case does not appear to warrant such imputation of rental income. From this I conclude that, in the instant case, no part of Cross' income should be excluded.

Accordingly, I concur in the result reached by the majority, even though I disagree with the majority's analysis of the rental issue.

COHEN, *J.*, agrees with this concurring opinion.

---

PARKER, *J.*, dissenting in part: I have no quarrel with our prior Indian smokeshop cases and I agree that they are

dispositive of the principal issue in this case.[1] However, none of those cases addressed the issue of whether rental income from restricted, allotted land (hereinafter trust land) or some portion of the smokeshop income allocable to the land itself is income "derived directly" from the trust land within the meaning of *Squire v. Capoeman*, 351 U.S. 1 (1956), and thus exempt from tax in the hands of the individual Indian allottee.[2] I think rental income to the Indian allottee or the portion of his smokeshop income allocable to the land itself is income "derived directly" from the trust land, and for that reason I dissent from the majority's unduly restrictive reading of the *Squire v. Capoeman* exemption.

Here, there is no question that petitioner Silas V. Cross (Mr. Cross) is an individual Indian allottee of the class entitled to the benefit of the *Squire v. Capoeman* exemption.[3] The only issue is whether the exemption for income "derived directly" from such trust land encompasses rental income from the trust land or a portion of the smokeshop income allocable to the trust land itself. As the Court of Appeals for the Ninth

---

[1]*Hoptowit v. Commissioner*, 78 T.C. 137 (1982), affd. on a related issue 709 F.2d 564 (9th Cir. 1983); *Swiger v. Commissioner*, T.C. Memo. 1984–228; *Comenout v. Commissioner*, T.C. Memo. 1982–40, on appeal (9th Cir., Dec. 10, 1982). While I might have decided the *Hoptowit* case on a more narrow ground since the taxpayer in that case was merely the lessee of another noncompetent Indian's allotted land (see note 2 below), I would have reached the same result. The *Swiger*, and *Comenout*, cases, however, did involve noncompetent Indians using their own allotted land for the operation of a commercial business, and I agree with the holdings in those cases. See also *Critzer v. United States*, 220 Ct. Cl. 43, 597 F.2d 708 (1979), cert. denied 444 U.S. 920 (1979).

[2]The benefit of the exemption under *Squire v. Capoeman*, 351 U.S. 1 (1956), flows only to the *individual Indian allottee* and then only as to income derived from *his own allotted land. United States v. Anderson*, 625 F.2d 910, 914–915 (9th Cir. 1980), cert. denied 450 U.S. 920 (1981); *Fry v. United States*, 557 F.2d 646, 648 (9th Cir. 1977), cert. denied 434 U.S. 1011 (1978); *Holt v. Commissioner*, 364 F.2d 38, 41 (8th Cir. 1966), cert. denied 386 U.S. 931 (1967). See also *Wynecoop v. Commissioner*, 76 T.C. 101, 105–107 (1981). For this reason, I of course agree with the majority that the son's wages from working in his father's smokeshop are taxable. Even where income is "derived directly" from the trust land within the meaning of *Squire v. Capoeman* so as to be tax exempt in the hands of the tribe (a nontaxable entity) or in the hands of the individual Indian allottee himself, the income would not retain its tax-exempt character in the hands of an employee whose wages are paid out of such tax-exempt income. See *Hoptowit v. Commissioner*, 709 F.2d 564 (9th Cir. 1983), affg. 78 T.C. 137 (1982) (services as member of tribal council); *Commissioner v. Walker*, 326 F.2d 261 (9th Cir. 1964) (services as an elected tribal treasurer); *Jourdain v. Commissioner*, 71 T.C. 980 (1979), affd. 617 F.2d 507 (8th Cir. 1980), cert. denied 449 U.S. 839 (1980) (services as chairman of Indian tribe).

[3]See note 2. The General Allotment Act of 1887, 24 Stat. 388, 25 U.S.C. sec. 331 et seq. (1982), provides that the United States is to hold in trust title to lands allotted to Indians under various treaties until the Secretary of the Interior determines the allottees competent to hold fee simple title to their allotted lands. The 1887 Act initially provided for a trusteeship of only 25 years, but this trusteeship was periodically extended by various Executive orders and finally was extended indefinitely by the Indian Reorganization Act of 1934, 48 Stat. 984, 25 U.S.C. sec. 462 (1982). See *Squire v. Capoeman*, 351 U.S. at 3–4.

Circuit stated in *Stevens v. Commissioner*, 452 F.2d 741, 744 (1971):

> Capoeman is not a technical or narrow decision; nor is its holding limited to capital gains taxes. Rather the Court found implicit in Section 5 and the amendment to Section 6 of the General Allotment Act a "congressional intent to subject an Indian allotment to all taxes only after a patent in fee is issued to the allottee." 351 U.S. at 8, 76 S.Ct. at 616. [Fn. ref. omitted.]

The "derived directly" test was not newly minted in the Supreme Court's 1956 *Squire v. Capoeman* decision but came instead with acknowledged historical antecedents.[4]

The majority's narrow limitation of *Squire v. Capoeman* is unfaithful to the purpose and historical source of the "derived directly" test. In articulating the test, the Supreme Court relied upon a treatise by the noted Indian law expert, Felix S. Cohen. See F. Cohen, Handbook of Federal Indian Law 265–266 (1941). Cohen had taken the phrase from an early Solicitor's Memorandum. See S.M. 5632, V-1 C.B. 193, 196 (1926). There the Solicitor's Memorandum, discussing Indian allottees under the Act of May 8, 1906, 34 Stat. 182, stated:

> These provisions clearly indicate that before the issuance of a fee simple patent such restricted land is exempt from taxation. The land being exempt from taxation, it follows that income directly derived from such land is also exempt.* * *

See also T.D. 3570, III-1 C.B. 85 (1924), and T.D. 3754, IV-2 C.B. 37 (1925), both opinions of the Attorney General adopted as Treasury decisions and cited with approval by the Supreme Court in *Squire v. Capoeman*, 351 U.S. at 8. These rulings, in turn, all relied on the landmark case of *Pollock v. Farmers' Loan & Trust Co.*, 157 U.S. 429, 581 (1895), vacated on other grounds 158 U.S. 601 (1895), holding, inter alia, that a tax on the rental income from real estate was a direct tax on the land. See also *Bagby v. United States*, 60 F.2d 80, 81 (10th Cir. 1932).

---

[4]See *Stevens v. Commissioner*, 452 F.2d 741 (9th Cir. 1971), where the court pointed out (452 F.2d at 744 n. 7) that:

"The [Supreme] Court also quoted with approval from Cohen, Handbook of Federal Indian Law, 265, where 'Felix S. Cohen, an acknowledged expert in Indian law,' said 'that "it is clear that the exemption accorded tribal and restricted Indian lands extends to the income derived directly therefrom." ' The Court noted also that Mr. Cohen "distinguished cases permitting the imposition of income taxes upon income derived from unrestricted lands, and upon reinvestment income." 351 U.S. at 8–9, 76 S.Ct. at 616."

Similarly, the predecessor of this Court recognized as early as 1928 that where the Indian allottee's land is tax exempt, the income from that land is also tax exempt. *Snell v. Commissioner*, 10 B.T.A. 1081 (1928). That case pointed out that while the income from the land was exempt, the income from reinvesting that tax-exempt income (so-called "reinvestment income") was not.

The purpose of the Supreme Court's "derived directly" test in *Squire v. Capoeman, supra,* was not to narrowly circumscribe the types of income that could be considered as directly derived from the land. Rather, the purpose was "to distinguish the Court's holding in *Five Civilized Tribes,*[5] sustaining taxability of income derived from investment of the proceeds of surplus income from allotted Indian land, or 'reinvestment income.' " F. Cohen, Handbook of Federal Indian Law, ch. 7, sec. B3, at 397 (1982 ed.). See also F. Cohen, Handbook of Federal Indian Law 266 (1941); *Squire v. Capoeman, supra,* 351 U.S. at 9; *Snell v. Commissioner, supra.*

While *Snell* involved income from oil and gas royalties and *Squire v. Capoeman* involved income from cutting timber, neither opinion restricts the types of income that can be considered as directly derived from the trust land nor superimposes any additional test of "exploitation" involving a diminution of the value of the trust land, as the majority suggests. For example, income from farming and ranching operations on trust lands is tax exempt to the individual Indian allottee on whose trust land such operations are conducted. *Stevens v. Commissioner, supra.* Farming and ranching, unless improperly conducted, do not damage or diminish the value of the trust land. See also *United States v. Daney,* 370 F.2d 791 (10th Cir. 1966), where the income from oil and gas produced and any royalty interests in oil and gas produced were taxable to the Indians under the particular act before the Court. However, the trust land in that case was still subject to the *Squire v. Capoeman* exemption, and the Court of Appeals for the Tenth Circuit held that the lease bonus was still income derived directly from the trust land and was still tax exempt. Citing *Bagby v. United States, supra* (which in turn relied on *Pollock v. Farmers' Loan & Trust Co., supra*), the Tenth Circuit said

---

[5]*Superintendent of Five Civilized Tribes v. Commissioner,* 295 U.S. 418 (1935).

that a tax on such a lease bonus was in substance a tax on the land. And it must be remembered that the very type of income involved in *Pollock v. Farmers' Loan & Trust Co., supra,* was rental income from the land.

I therefore conclude that rental income from trust land is tax exempt to the individual Indian allottee under *Squire v. Capoeman, supra.* See also *United States v. Hallam,* 304 F.2d 620 (10th Cir. 1962), which held that rental income from trust land (among other types of income) was exempt under the *Squire v. Capoeman* "derived directly" test. See also Rev. Rul. 56–342, 1956–2 C.B. 20.

Accordingly, I also must respectfully disagree with the contrary holding of the Federal District Court in *Hale v. United States,* 579 F. Supp. 646 (E.D. Wash. 1984), on appeal (9th Cir., Mar. 8, 1984), which the majority cites and quotes with approval. The *Hale* case involved the Indian owner-lessor of allotted land, apparently the same land leased by Mr. Hoptowit, the taxpayer in our smokeshop case of *Hoptowit v. Commissioner,* 78 T.C. 137 (1982), affd. on a related issue 709 F.2d 564 (9th Cir. 1983). Mr. Hale's land was held in trust for him by the United States under the General Allotment Act of 1887 just as Mr. Cross' land was. The Federal District Court agreed that income directly derived from such trust land was exempt from Federal income tax under *Squire v. Capoeman,* but held that the rental income was not derived directly from the land.

I think the *Hale* court, like the majority here, ignores the purpose and historical source of the "derived directly" test. In my view, the *Hale* court fell into the same error as the majority in this case by attempting to superimpose an "exploitative" diminution of value test onto *Squire v. Capoeman's* "derived directly" test.[6] Rental income, in my opinion, is one of the clearest types of income directly derived from trust land.

---

[6]I do not suggest that *Squire v. Capoeman, supra,* exempts the income from the individual Indian allottee's improvements on his trust land. The Court of Appeals for the Ninth Circuit in *United States v. Anderson,* 625 F.2d at 913 n. 3, has drawn a distinction between income from a "non-land-based" business conducted on trust lands, such as a law practice, which is taxable, and income from other presumably "land-based" operations on trust land, which are not taxable. Some of the accepted tax-exempt activities that can be carried on include mining, agriculture, grazing one's own cattle on one's trust land, and licensing or leasing grazing rights to another. 625 F.2d at 913 n. 3. I agree with *Critzer v. United States, supra,* that income derived from improvements to trust land, inventory, and personal services are not tax exempt. However, renting out property, even a single piece of property, can constitute a trade or business carried on by a taxpayer. *Curphey v.*

Accepting, as I do, that actual rental income from trust land is exempt to the individual Indian allottee under *Squire v. Capoeman, supra,* I think there is no sound basis for treating differently the income of a noncompetent Indian from activities he himself conducts on his allotted land, to the extent that such income is attributable to the trust land itself rather than to the improvements, inventory, or personal services. See note 6. In both situations, a tax on the income derived from the land would be a direct tax upon the land itself within the meaning of *Pollock v. Farmers' Loan & Trust Co., supra.* I think that the suggestion of the Court of Claims (now the Court of Appeals for the Federal Circuit) in *Critzer v. United States,* 220 Ct. Cl. 43, 597 F.2d 708, 714 (1979), which the majority rejects, is the proper approach. See majority opinion at note 10.

Contrary to the statement in the majority opinion and in Judge Chabot's concurring opinion, I am not in any way imputing income to Mr. Cross from his own use of his own land. I am not creating imputed income where no income exists. Rather, I am suggesting the use of the fair rental value of Mr. Cross' unimproved trust land, which has been stipulated by the parties, as an appropriate measure of the extent to which his smokeshop income is attributable to the raw land itself, and thus exempt from tax under *Squire v. Capoeman, supra,* as income derived directly from his trust land. An allocation of income among its various sources is hardly unprecedented in Federal tax law, nor even in applying the exemption of *Squire v. Capoeman, supra.* See Rev. Rul. 60–377, 1960–2 C.B. 13, modified by Rev. Rul. 62–16, 1962–1 C.B. 7. The "difficult computational and valuation problems" prophesied by the majority, in my opinion, pose no threat and simply come within the usual factfinding chores of a trial court.

Indian taxpayers have hardly advanced their cause by persisting in their untenable claim to a general exemption from Federal income taxes simply because they are Indians. See majority opinion at note 9. See also note 2 to this dissenting opinion. While the scope of the *Squire v. Capoeman*

---

*Commissioner,* 73 T.C. 766, 774–775 (1980). Actually, renting out one's trust land to another, as Mr. Hale did, would seem to be quintessentially a "land-based" business and the rental income therefrom to be directly derived from the land within the meaning of *Pollock v. Farmers' Loan & Trust Co.,* 157 U.S. 429 (1895), vacated on other grounds 158 U.S. 601 (1895), and *Squire v. Capoeman, supra.*

exemption is not nearly as broad as the Indian claimants in this and other courts have contended over the years, nonetheless, it is not as narrow and restrictive as the majority opinion holds. In its proper sphere, where an individual Indian allottee conducting operations on his own trust land directly derives income from the land itself, that income is tax exempt. I think rental income or the portion of the smokeshop income allocable to the raw land itself is within the *Squire v. Capoeman* exemption.

FAY, STERRETT, WHITAKER, and KÖRNER, *JJ.*, agree with this dissent.