LEONARD TONASKET and EMMA G. TONASKET, ET AL., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent. Tonasket v. Commissioner
Docket Nos. 3108-78, 16939-80, 13273-81.
United States Tax Court
T.C. Memo 1985-365; 1985 Tax Ct. Memo LEXIS 275; 50 T.C.M. (CCH) 489; T.C.M. (RIA) 85365; July 22, 1985; As Amended July 24, 1985 Robert E. Kovacevich, for the petitioners. Thomas N. Tomashek, for the respondent. FEATHERSTON
MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge: Respondent determined the following deficiencies in petitioners' Federal income taxes: Additions to Tax
Sec. 6653(a),
Sec. 6651(a),
Docket No.
Year
Deficiency
I.R.C. 1954
I.R.C. 1954
3108-78
1972
$43,329.74
$2,166.48
1973
30,999.87
1,549.99
1974
44,310.93
2,215.55
11,077.73
16939-80
1975
61,962.34
3,106.07
15,490.59
1976
59,545.23
2,977.26
14,886.31
13273-81
1977
67,730.55
3,386.53
After concessions, [2] including *276 the additions to tax, the issues for decision are: (1) whether income from retail sales earned by petitioners, "noncompetent" American Indians, on their allotted land is subject to Federal Income tax; and (2) whether income received by petitioners as tribe members under leases of unallotted tribal land used for logging and grazing is subject to Federal income tax. FINDINGS OF FACT Petitioners Leonard Tonasket and Emma G. Tonasket, husband and wife, resided in Omak, Washington, at the time they filed the petitions herein. They filed joint Federal income tax returns with the Internal Revenue Service Center, Ogden, Utah, for 1972, 1973, 1975, 1976, and 1977. Petitioners did not file a Federal income tax return for 1974. Petitioner Leonard Tonasket (hereinafter petitioner) is a noncompetent full-blooded Colville Indian. [3] During the years in question, petitioner owned and operated a retail business in Omak, Washington, known as the Stogie Shop (the smokeshop). The smokeshop was operated on allotment number S700 of the Colville Confederated Tribes, held in trust by the United States and located *277 on the Colville Indian Reservation. Two statutes provided for the allotment of the Colville Indian Reservation. The Act of March 8, 1906, ch. 629, 34 Stat. 55, provided that each Indian should receive an allotment of 80 acres to be held in trust by the United States, and that at the expiration of the trust period, the United States would convey the land to the Indian or his heirs "in fee, discharged of said trust and free of all charge or encumbrance whatsoever." [4] The remainder of the reservation was allotted under the Act of March 22, 1906, ch. 1126, 34 Stat. 80, which provided that the Secretary of the Interior "shall cause patents to issue thereunder under the provisions *278 of the General Allotment law of the United States." Petitioner owns an equitable interest in the allotment, which consists of approximately 16-1/2 acres fronting on Omak Street, an extension of Highway 155. The property is not suitable for farming, grazing, mining or harvesting timber, but because of its size and location on the highway, it is reasonably well-suited for a retail business. Petitioner's net profit on the sale of cigarettes and other tobacco and nontobacco products at the smokeshop during the years in question was as follows: Year
Net Profits
1972
$42,783
1973
39,685
1974
57,081
1975
27,046
1976
35,818
1977
32,928
The Colville Indian Tribe (hereinafter the tribe) leased portions of its common land for logging and grazing operations. The income from the leases, plus interest, was paid to members of the tribe on a per capita basis (per capita payments). Petitioners received per capita payments as members of the tribe in the following amounts: Year
Amount
1972
$3,100
1973
2,200
1974
2,000
1975
900
1976
2,400
1977
900
*279 Respondent determined that both the net profit from the smokeshop and the per capita payments from the lease of tribal lands were income taxable to petitioners. OPINION Sections 1 and 61 [5] provide that the income of each individual from whatever source derived, is subject to Federal income tax. Income of American Indians, as well as other individuals, is taxable "unless an exemption from taxation can be found in the language of a Treaty or Act of Congress." Commissioner v. Walker,326 F.2d 261, 263 (9th Cir. 1964), affg. in part and revg. in part 37 T.C. 962 (1962); Jourdain v. Commissioner,71 T.C. 980, 987 (1979), affd. per curiam 617 F.2d 507 (8th Cir. 1980). The Supreme Court found such an exemption under the General Allotment Act of 1887, ch. 119, 24 Stat. 388, 25 U.S.C. sec. 331, et seq. (1982).[6]Squire v. Capoeman,351 U.S. 1 (1956). Finding congressional intent to exempt allotted land from all taxes until the fee interest was transferred to the allottee (351 U.S. at 8), the Supreme Court held that income derived directly from the land was exempt from tax. *280 Specifically, it held that the Federal income tax did not apply to income received by noncompetent Indians from the sale of standing timber on lands allotted to them from the reservation. Squire v. Capoeman,supra at 9-10. Petitioner's primary contention is that net profits from the smokeshop and per capita payments he received were derived directly from his allotted reservation land, and as such, are exempt from Federal income taxation.
1. Smokeshop Income
This Court has recently considered the issue of whether income from a smokeshop should be considered as "derived directly" from the land, and held in a Court-reviewed opinion that it is not. Cross v. Commissioner,83 T.C. 561, 564 (1984), on appeal (9th Cir., June 27, 1985).[7] *281 Petitioners in Cross were noncompetent members of the Puyallup Indian Nation who operated a smokeshop on land held in trust by the United States pursuant to the General Allotment Act of 1887 and the Medicine Creek Treaty of 1854, 10 Stat. 1132. Petitioners argued that the treaty under which they held the land should be interpreted to create an exemption from income taxation. The Court applied the "derived directly" standard enunciated by the Supreme Court and held that retail sales, including the operation of a smokeshop, do not meet that standard, stating (83 T.C. at 566 quoting Squire v. Capoeman,supra at 10): [T]he continued use of the land for retail sales from a smokeshop does not decrease the economic value of the land nor impair the capacity of a competent Indian to "go forward * * * with the necessary chance of economic survival." *282 Petitioner argues that Cross does not apply to his situation because the favorable location of his allotted land is the sole reason for the success of his smokeshop. It is undisputed that petitioner's land is not suitable for farming, grazing, mining or harvesting timber, but because of its size and location on the highway, it is reasonably well-suited for a retail business.Petitioner further contends that his land is put to its highest and best use in the operation of a commercial smokeshop.In support of this contention, petitioner placed in evidence an appraisal report stating the appraiser's opinion that the land's highest and best use was for the operation of a smokeshop. The Court of Claims considered a similar claim made by a Cherokee Indian who owned and operated a motel, restaurant, and gift shop on her possessory holding. [8]Critzer v. United States,220 Ct. Cl. 43, 597 F.2d 708 (1979). The taxpayer in that case argued that, because her holdings were not suited for farming or ranching, the land was being put to its "highest, best, and most natural possible use." 220 Ct. Cl. at 51, 597 F.2d at 713. The court stated that the taxpayer's improvements *283 to the land, as well as the personal services rendered in connection with those improvements, constituted the primary sources of her income. Thus, the income from the motel, restaurant, and shop could not be considered as derived directly from the land. In Hoptowit v. Commissioner,78 T.C. 137 (1982), affd. on another issue 709 F.2d 564 (9th Cir. 1983), the taxpayer, a member of the Yakima Indian Nation, contended that his smokeshop would not have existed but for its location on reservation land, and therefore the income from the smokeshop was received principally "as a result of the use of reservation land and resources." 78 T.C. at 144-145. This Court held that the location of the taxpayer's smokeshop on reservation land is not determinative, finding that the smokeshop income was earned primarily through the taxpayer's labor, the sale of tobacco products, and an exemption from State taxes. [9]
*284 We have found no case holding that income from a retail business operated on allotted reservation land is exempt from taxation as income derived directly from the land. In fact, as petitioner points out, courts have held income to be derived directly from the land only in situations involving exploitation of the land itself. Stevens v. Commissioner,452 F.2d 741, 746 (9th Cir. 1971), affg. in part and revg. in part 52 T.C. 330 (1969), Supp. Opinion 54 T.C. 351 (1970) (income from farming and ranching exempt); United States v. Daney,370 F.2d 791, 793-794 (10th Cir. 1966) (income from oil and gas leases exempt); Big Eagle v. United States,156 Ct. Cl. 665, 677, 300 F.2d 765, 771 (1962) (royalties from mineral deposits exempt). In view of our decisions in Cross and Hoptowit, as well as that in the Critzer case, we conclude that income received from the operation of a smokeshop on reservation land is not derived directly from the land, and is therefore not exempt from taxation. We are not convinced by petitioner's assertion that the location of his business is determinative of this issue, even *285 if the operation of a smokeshop were the highest and best use of his allotted land. [10]
2. Per Capita Payments
Respondent determined that per capita payments from leases of common land belonging to the Colville Tribe, received by petitioner and his wife during tax years 1972 through 1977, were not exempt from Federal income taxation. We can hold for petitioner only if we find an exemption from taxation in the language of some *286 statute or treaty. United States v. Anderson,625 F.2d 910, 913 (9th Cir. 1980). We are not free to create, by implication, a tax exemption for petitioner. Mescalero Apache Tribe v. Jones,411 U.S. 145, 156 (1973); Fry v. United States,557 F.2d 646, 649 (9th Cir. 1977); Jordain v. Commissioner,71 T.C. 980, 990 (1979), affd. per curiam 617 F.2d 507 (8th Cir. 1980). Petitioner has not referred to, nor have we found, a treaty or statute which would exempt from taxation the per capita payments received by petitioner. Furthermore, courts dealing with the taxability of income derived from common tribal lands, as opposed to allotted land, have consistently held such income to be taxable. United States v. Anderson,supra at 914 (income from cattle ranching under a tribal license was taxable); Fry v. United States,supra at 648 (income earned by logging subcontractor from logging operations on reservation land was taxable); Wynecoop v. Commissioner,76 T.C. 101, 107 (1981) (dividends from mineral leases of tribal lands were taxable). [11] We therefore *287 conclude that per capita payments received by petitioner from the lease of common tribal lands are taxable.
To reflect the foregoing, Decisions will be entered under Rule 155.
Footnotes
1. Parties in the following cases have stipulated to be bound by the Court's decision in this case: Frank W. Moore and Estate of Florence E. Moore, docket Nos. 13588-81, 13589-81, 8713-82; and Dawn Leonard, docket No. 8712-82.↩
2. The parties agreed to the amount of petitioners' net profits from retail sales.↩
3. The term "noncompetent Indian," as used in cases such as the instant one, refers to one who has been allotted land that is held in trust for him by the United States and who, therefore, may not alienate or encumber that land without the consent of the United States. The term does not denote mental incapacity. See Stevens v. Commissioner,452 F.2d 741, 742 n. 1 (9th Cir. 1971), affg. in part and revg. in part 52 T.C. 330 (1969), Supp. Opinion 54 T.C. 351↩ (1970).
4. See the General Allotment Act of 1887, ch. 119, 24 Stat. 388, 25 U.S.C. sec. 331, et seq. (1982)↩, which contains identical language.
5. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise noted. ↩
6. The General Allotment Act 1887 contains identical language to that of the Act of Mar. 8, 1906, ch. 629, 34 Stat. 55, and is incorporated by reference in the Act of Mar. 22, 1906, ch. 1126, 34 Stat. 80, the two Federal statutes which provided for the allotment of the Colville Indian Reservation.↩
7. See also Dillon v. Commissioner,T.C. Memo. 1984-635; Wilbur v. Commissioner,T.C. Memo. 1984-576; Landry v. Commissioner,T.C. Memo. 1984-575; Estate of Davis v. Commissioner,T.C. Memo. 1984-574; Gord v. Commissioner,T.C. Memo. 1984-517↩, on appeal (9th Cir., Dec. 21, 1984).
8. A possessory holding differs from an allotment only in that a possessory holding cannot ripen into a fee title. Critzer v. United States,220 Ct. Cl. 43, 4l, 597 F.2d 708, 710↩ (1979).
9. The Court noted that the taxpayer, as lessee of the allotted land, would not be entitled to an exemption, even if the treaty involved were found to provide an exemption for the person for whom the allotment was held in trust. Hoptowit v. Commissioner,78 T.C. 137, 145 n. 10 (1982), affd. on another issue 709 F.2d 564↩ (9th Cir. 1983).
10. Petitioner has not established a factual predicate for an argument that he is entitled to an exemption with respect to the fair rental value of his land. Cf. Cross v. Commissioner,83 T.C. 561, 567-568 (1984), on appeal (9th Cir., June 27, 1985); Critzer v. United States,220 Ct. Cl. 43, 53, 597 F.2d 708, 714 (1979); Hale v. United States,579 F. Supp. 646, 648 (E.D. Wash. 1984). Petitioner appears to argue that as a matter of policy the exemption claimed should be granted. This argument was answered in Stevens v. Commissioner,452 F.2d 741 (9th Cir. 1971), affg. in part and revg. in part 52 T.C. 330 (1969), Supp. Opinion 54 T.C. 351↩ (1970).
11. See also Holt v. Commissioner,364 F.2d 38, 41 (8th Cir. 1966) affg. 44 T.C. 686 (1965); Earl v. Commissioner,78 T.C. 1014, 1019 (1982); Jourdain v. Commissioner,71 T.C. 980, 989 (1979), affd. per curiam 617 F.2d 507↩ (8th Cir. 1980).