GEORGE S. and FRELA D. BECK, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Beck v. Commissioner
Docket No. 11689-92
United States Tax Court
T.C. Memo 1994-122; 1994 Tax Ct. Memo LEXIS 130; 67 T.C.M. (CCH) 2469; March 28, 1994, Filed *130 Decision will be entered under Rule 155. George S. Beck and Frela D. Beck, pro sese. For respondent: Martha J. Shafor. DINAN
DINAN
MEMORANDUM OPINION DINAN, Special Trial Judge: This case was heard pursuant to the provisions of section 7443A(b)(3) and Rules 180, 181, and 182. [1]
Respondent determined deficiencies in petitioners' Federal income tax, an addition to tax, and a penalty as follows: Addition to Tax
Penalty
Year
Deficiency
Sec. 6653(a)(1)
Sec. 6662(b)(1)
1988
$   577
$ 29
--
1989
1,859
--
$ 354
1990
1,433
--
--
After concessions by respondent, the issues for decision are: (1) Whether rental income earned from apartment buildings located on the Cherokee Indian Reservation in North Carolina by an enrolled member of the Eastern Band of Cherokee Indians is exempt from Federal *131 income taxation; (2) whether petitioners are entitled to expense, rather than capitalize and depreciate, costs incurred for the purchase of carpeting and the installation of a fence during the year 1990. [2]
Some of the facts have been stipulated and are so found. The stipulations of fact and attached exhibits are incorporated herein by this reference. Petitioners resided in Cherokee, North Carolina, on the date the petition was filed in this case. Cherokee is located on the Cherokee Indian Reservation in North Carolina. Petitioners timely filed their Federal income tax returns for the years in issue with the IRS. Petitioner Frela D. Beck (hereinafter Mrs. Beck) is an enrolled member of the Eastern Branch of the Cherokee Indians. Petitioner George S. Beck is not an enrolled member of an Indian tribe. Mrs. Beck is the beneficial owner of land *132 located on the Cherokee Indian Reservation of North Carolina in Cherokee, North Carolina. The land is subject to the provisions of the Cherokee Allotment Act, ch. 253, 43 Stat. 376, 25 U.S.C. sec. 331 note (1988). Legal title to the land is in the United States of America held in trust for the Eastern Band of the Cherokee Indians. Mrs. Beck holds her land pursuant to a Certificate of Possessory Holding, which the tribe issued to her. Possessory holdings are specific parcels of tribal land that are permanently assigned to specific tribal members. The certificate authorizes the holder to construct buildings and other improvements on the land, which are considered the personal property of the holder, and in which the tribe has no interest. When the holder dies, the holder's interest normally is permitted to pass to her devisee or heirs under North Carolina law, provided those individuals are enrolled members of the tribe. Saunooke v. United States, 806 F.2d 1053, 1054 (Fed. Cir. 1986). Possessory holdings are not allotments, but differ from allotments only in that possessory holdings can never ripen into fee titles. *133 The Indian Reorganization Act of 1934, ch. 576, 48 Stat. 984, 25 U.S.C. sec. 461 (1988), precluded further allotments in order to halt the practice of many Indians who would receive fee title and promptly sell the land, leaving themselves without any means of support and adversely affecting the unity of the Tribe; see Critzer v. United States, 220 Ct. Cl. 43, 597 F.2d 708, 710 (1979). On Mrs. Beck's trust land, petitioners constructed a 30-unit apartment complex. The complex is well maintained, nicely designed, and well constructed. Petitioners built a 5-unit building in 1977, a 1-unit building with a garage in 1978, an 8-unit building in 1980, and a 12-unit and a 4-unit building in 1982 and 1983, respectively. Petitioners managed the complex themselves from their home, which is located nearby. They generally rent the apartment units to "low income" tenants, most of whom are also Indians. During 1988, 1989, and 1990, petitioners reported net rental income from the operation of the apartment complex in the amounts of $ 3,872, $ 8,265, and $ 9,605, respectively. In 1991, they filed amended returns *134 for the years 1988, 1989, and 1990, excluding therefrom income received from the operation of their apartment complex. Petitioners attached a statement to each amended return claiming that income received from the rental of their apartment units was exempt from Federal income taxation. Section 61 provides that gross income includes "all income from whatever source derived". It is well established that American Indians are subject to Federal income taxation unless an exemption can be found in the language of a Treaty or an Act of Congress. Squire v. Capoeman, 351 U.S. 1, 6 (1956); United States v. Willie, 941 F.2d 1384, 1400 (10th Cir. 1991); Cross v. Commissioner, 83 T.C. 561, 564 (1984), affd. sub nom. Dillon v. United States, 792 F.2d 849 (9th Cir. 1986). The fact that Mrs. Beck is an American Indian will not preclude petitioners from being liable for the payment of income tax. Hoptowit v. Commissioner, 78 T.C. 137, 145 (1982), affd. 709 F.2d 564 (9th Cir. 1983). In order to prevail, the taxpayers *135 must point to express exemptive language in some statute or treaty that excludes the income in issue from their gross income. Rickard v. Commissioner, 88 T.C. 188, 192 (1987); Cross v. Commissioner, supra at 564; see Welch v. Helvering, 290 U.S. 111 (1933). Petitioners claim that the Indian General Allotment Act, ch. 119, 24 Stat. 388 (1987), 25 U.S.C. sec. 331-358 (1988) provides such an express exception to Federal income taxation. The Indian General Allotment Act is not directly applicable to petitioners. Petitioners' land is governed by the Cherokee Allotment Act of 1924, 43 Stat. 376, 25 U.S.C. sec. 331 (note). However, the test of entitlement to a Federal income taxation exemption is the same under both statutes. Saunooke v. United States, supra at 1055. In Squire v. Capoeman, supra, the Supreme Court found a Federal income tax exemption based on an interpretation of the Indian General Allotment Act. The Supreme Court found a congressional *136 intent to exempt allotted lands from all taxes until after the fee interest was conveyed to the allottee. It held that income received by an incompetent Indian from the sale of standing timber was exempt from Federal income tax, but "reinvestment income" was not. Id. at 9. The Court stated: "It is clear that the exemption accorded tribal and restricted Indian lands extends to the income derived directly therefrom." Id. (quoting Cohen, Handbook of Federal Indian Law, 265, (1941) [emphasis added]). The stated rationale for the "directly-derived" standard was that the logging of the land caused a diminution of the land's value. The Supreme Court stated: Once logged off, the land is of little value. The land no longer serves the purpose for which it was by treaty set aside * * * and for which it was allotted to him. * * * Unless the proceeds of the timber sale are preserved for * * * [the taxpayer], he cannot go forward when declared competent with the necessary chance of economic survival in competition with others. * * * [Squire v. Capoeman, supra at 10. Fn. ref. omitted.]
Petitioners request *137 that we take a fresh look at the Capoeman decision. They contend that the "derived-directly" standard was not the test set forth by the Supreme Court in Capoeman, but is merely an invention of lower courts, such as this. The "derived-directly" standard is settled precedent in this and all other courts that have addressed this issue. United States v. Willie, supra at 1400; Saunooke v. United States, supra at 1055; Cross v. Commissioner, supra at 565-66. In the alternative, petitioners contend that the "derived-directly" test has been misinterpreted by the IRS and the courts. Petitioners contend that their income is directly derived from the land. Petitioners emphasize that the apartment complex sits on Indian land, and that they received income from the rental of apartment units located on Indian land. Petitioners contend that the Capoeman test, if properly applied, would exempt income received from the rental of apartment units on Indian land from Federal income taxation. This Court in Cross v. Commissioner, supra at 566, adopted *138 a narrow reading of the "derived-directly" exemption, observing that it had been applied only in situations where there is exploitation of the land itself, citing Stevens v. Commissioner, 452 F.2d 741 (9th Cir. 1971), affg. in part and revg. in part 54 T.C. 351 (1970), affg. in part 52 T.C. 330 (1969) (income from farming and ranching exempt); United States v. Daney, 370 F.2d 791 (10th Cir. 1966) (income from oil and gas leases tax-exempt); Big Eagle v. United States, 156 Ct. Cl. 665, 300 F.2d 765 (1962) (royalties from mineral deposits tax exempt).[3] We found that the rationale stated in Squire v. Capoeman, supra, was that the land was to be preserved in trust for the Indian, until such time as he is determined competent and able to compete economically. To allow taxation of the proceeds of activities that diminish the land's value runs contrary to the rationale underlying Capoeman, for it reduces the value of that which was to be preserved. See Anderson v. United States, 845 F.2d 206, 207 (9th Cir. 1988). *139 *140 The courts have distinguished income received from activities that diminish the value of the land from income received from those activities conducted that are a result of capital investment or labor, although the activity takes place on land held in trust. In Critzer v. United States, 220 Ct. Cl. 43, 597 F.2d 708 (1979), an enrolled member of the Cherokee Indian Nation sought an exemption for income received from the operation of a motel, a restaurant, a gift shop, and from the rental of a craft shop and apartment units. The Court of Claims denied the exemption. It found that the business and rental income was "attributable primarily to the utilization of the capital improvements constructed on the land and * * * [the taxpayers] management of those assets." Id. at 713. The Court observed: "If * * * [the taxpayer] were to sit in a telephone booth on her Indian land and sell stock and bonds by the phone from the booth, it would be ludicrous to attempt to argue that any income, so earned, was directly derived from the land." Id.
In Hoptowit v. Commissioner, 78 T.C. at 145, income received from *141 the operation of a smokeshop on allotted land was held to be taxable. The income was found to result primarily from taxpayer's labor. The same result was reached regarding taxpayer's income from a smokeshop in Cross v. Commissioner, supra at 566. In petitioners' case, the continued use of the land for an apartment complex does not decrease the economic value of the land. There is no exploitation of the land by petitioners resulting in a diminution of the land's value. The land itself is unchanged by the construction of the apartment complex, and the subsequent rental of its units. Moreover, we find that the rental income petitioners received was primarily derived from the utilization of a capital asset, i.e., the apartment complex, and not the land. Petitioners received monthly rent for the use of those units in the apartment complex by the occupants of the units. Although we recognize, of course, that the land underlying the apartments was necessary to the operation of the apartment and has some value, those renting the units in the apartments were paying principally for the use of the units, the capital asset. [4] The land was merely incidental *142 to the generation of the rental income and, therefore, the income was not "derived-directly" from the land. To hold otherwise, would be to ignore the "directly" part of the test. Petitioners argue that absent a full exemption *143 for their rental income, they are entitled to exempt, at least, that portion of their rental income that is equal to the fair market value of the rental of the trust property. This issue was addressed in Cross v. Commissioner, supra, and rejected. See also Saunooke v. United States, 806 F.2d at 1057. Petitioners also find an exemption from Federal income taxation in the phrase "Indians not taxed" in art. 1, sec. 2 cl. 3, and sec. 2 of the 14th Amendment to the United States Constitution. It is well settled that the phase "Indians not taxed" relates solely to the taxation of Indians by the States. The phrase is not to be construed to circumscribe the taxing power of the Federal Government. Lazore v. Commissioner, 11 F.3d 1180, 1187 (3d Cir. 1993), affg. in part, revg. in part T.C. Memo. 1992-404; United States v. Willie, 941 F.2d at 1400; Cross v. Commissioner, supra at 567 n.9; Jourdain v. Commissioner, 71 T.C. 980, 988 (1979), affd. 617 F.2d 507 (8th Cir. 1980). *144 Petitioners next contend that the Treaty Between the United States of America and the Cherokee Nation of Indians, July 19, 1866, 14 Stat. 799 (hereinafter the 1866 Treaty) provides an exemption from Federal income taxation. Petitioners specifically rely on Article 10, which states as follows: Every Cherokee and freed person resident in the Cherokee nation shall have the right to sell any products of his farm, including his or her livestock, or any merchandise or manufactured products, and to ship and drive the same to market without restraint, paying any tax thereon which is now or may be levied by the United States on the quantity sold outside the Indian territory.
Petitioners further state that it would be illogical for the Cherokee Indians, a sovereign nation, to give up their land to another government, unless there was an agreement, explicit or implied, not to be taxed. They contend that Article 10, read in light of the historical understanding of the Indians, and all ambiguities occurring being resolved from the standpoint of the Indian, indicates that the Cherokee Indians entered into the 1866 Treaty with the belief that it exempted them from those taxes levied *145 at the time of the signing of the Treaty and any and all future forms of taxation. It is generally true that ambiguous language used in treaties is to be resolved in favor of the tribe. Lazore v. Commissioner, supra at 1184-1185 (citing Oregon Dept. of Fish & Wildlife v. Klamath Indian Tribe, 473 U.S. 753, 766 (1985)); see Squire v. Capoeman, 351 U.S. at 7. However, this rule applies only if such statute or treaty contains language which can be reasonably construed to confer an income tax exemption. Dillon v. United States, 792 F.2d 849, 853 (9th Cir. 1986), affg. Cross v. Commissioner, 83 T.C. 561, 564 (1984). The intent to exclude must be definitely expressed. Id.
The 1866 Treaty simply does not provide petitioners with an express restriction on the ability of the United States to tax income. There is no textual support for petitioners' contention. Article 10 plainly does not refer to an exemption from income tax, and we cannot create one by implication. Cross v. Commissioner, supra at 565. *146 We have considered the remainder of petitioners' arguments, and we find them to be without merit. The second issue is whether petitioners are entitled to expense, rather than capitalize and then depreciate, costs incurred for the purchase of carpeting, and the installation of a fence during the year 1990. Petitioners do all the regular maintenance on the apartment complex themselves. In connection with their maintenance duties, each year, petitioners purchase a roll of carpet to be used for the apartment complex. Petitioners replaced a carpet or section of carpet within a room in a unit only if the carpet was worn. Generally, sections in living rooms are replaced more frequently than sections in bedrooms, because living rooms received more foot traffic. Rarely is the carpet in an entire apartment unit replaced. During 1990, petitioners spent $ 2,989 on the purchase of a carpet roll. Petitioners personally constructed a 900-foot wood fence around the apartment complex, using pressure-treated lumber. The fence materials cost $ 3,000. The wood fence replaced a chain-link fence that had fallen into disrepair. Petitioners constructed the fence to protect the apartment occupants, *147 especially the children, from the miscreants that roamed the area. Petitioners expect the fence to last 40 years. Capital expenditures are those expenses which add to the value or substantially prolong the useful life of the property. Sec. 1.263(a)-1(b), Income Tax Regs. Expenses for incidental repairs or maintenance are currently deductible if they neither materially add to the value of the property nor appreciably prolong the property's useful life. Sec. 1.162-4, Income Tax Regs.
Petitioners are entitled to deduct the entire cost of the carpet acquired during the year. The carpet was used only to repair those individual sections within a room or rooms within the unit that were in need of replacement. The carpet did not materially add to the value of the property nor prolong the property's useful life. However, petitioners must capitalize the cost of the fence that they constructed around the complex. Petitioners did not repair an old fence that was there before, as they contend. Rather, they constructed an entirely new *148 wood fence that, by their own admission, should last 40 years. Based on the foregoing, Decision will be entered under Rule 155. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the taxable years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. In respondent's pretrial brief, she conceded that the addition to tax under section 6653(a)(1) and the section 6662(b)(1) accuracy-related penalty were not applicable.↩
3. The Ninth Circuit in affirming Cross, described the "exploitation" rationale as "inadequate". Dillon v. United States, 792 F.2d 849, 855 (9th Cir. 1986) affg. Cross v. Commissioner, 83 T.C. 561 (1984). The Ninth Circuit, citing Judge Parker's dissenting opinion in Cross, concluded that the "exploitation" rationale did not adequately describe the scope of the "derived-directly" standard. It stated that an "exploitation" rationale could not adequately explain why income generated from ranching and farming were exempted from income taxation because, unless done improperly, these activities do not exploit the land. The Court concluded that only income that was "generated principally from the use of reservation land and resources" is "derived directly" from the land. Id. at 856. We decline petitioner's invitation to adopt the Ninth Circuit's interpretation. This case is not appealable to the Ninth Circuit. Moreover, we do not believe the result would be different.↩
4. Petitioners claim to have found support for their argument in Priv. Ltr. Rul. 83-49-005 (Aug. 17, 1983) (hereinafter the Ruling). In the Ruling, taxpayer, an enrolled Indian, held a trust interest in Indian reservation land. The IRS determined that the income that he received from the rental of this land for campsites was exempt from taxation because the income was derived directly from the land within the meaning of Squire v. Capoeman, 351 U.S. 1 (1956). Private Letter Rulings cannot be used or cited as precedent. Sec. 6110(j)(3)↩. Furthermore, petitioners' situation is not similar to that of the taxpayer in the Ruling. Petitioners earned income principally from the utilization of their capital asset, whereas the IRS determined the campsite owner did not.