BRYAN L. STEVENS AND BRYAN L. STEVENS AS SURVIVING SPOUSE OF ALMA STEVENS, DECEASED, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 4719–62. Filed February 25, 1970.

*Charles A. Hobbs* and *Douglas W. Morrison,* for the petitioner.
*Ernest J. Wright,* for the respondent.

### SUPPLEMENTAL OPINION

SCOTT, *Judge:* On May 27, 1969, the Opinion of this Court in this case was filed (52 T.C. 330) and on August 6, 1969, the decision of this Court pursuant thereto was entered.

On September 23, 1969, petitioner filed a motion for leave to file a motion for review and revision of the opinion and lodged the Motion for Review and Revision of Opinion. On October 24, 1969, petitioner filed a motion to vacate the decision entered in this case on August 6, 1969. It appearing to the Court that the Opinion in this case filed May 27, 1969, considered certain transactions to have been entered into pursuant to the provisions of section 4 of the Act of June 18, 1934 (48 Stat. 984, 25 U.S.C. sec. 464), when in fact certain of these transactions were authorized by section 5 of that Act (25 U.S.C. sec. 465), petitioner's motions to vacate the decision entered August 6, 1969, and for leave to file Motion for Review and Revision of Opinion were granted on October 24, 1969, and the Motion for Review and Revision was filed on that date.

Petitioner's motion sought to have this Court revise its opinion to hold that petitioner's income from grazing cattle on the 362.59 acres of land which petitioner purchased with his own funds from Joseph Shawl (Fort Belknap allottee No. 1161) and Melda Black Hoop Shawl on December 9, 1947, and the approximately 360 acres of land which he acquired on August 16, 1951, from Lillian Adams Werle (Fort Belknap allottee No. 492) and Lewis H. Werle in exchange for the parcel of land containing approximately 360 acres which he had purchased with his own funds on June 30, 1950, from Edward Phares (Fort Belknap allottee No. 460) is exempt from Federal income tax.

On October 27, 1969, the parties filed a "Third Supplemental Stipulation of Facts" and thereafter filed briefs and presented oral argument with respect to petitioner's motion.

The facts set forth in the third supplemental stipulation of facts are incorporated herein by reference. Summarily these facts are that it is customary practice on the Fort Belknap Indian Reservation for the Secretary to allow an Indian who applies to sell his restricted Indian lands to freely enter into negotiations respecting the sale and the selling price. In the case of a negotiated sale (as opposed to a bid sale) the Superintendent of the Fort Belknap Reservation furnishes the Indian seller with an appraisal of the value for use in negotiations involving the price of the land and the Secretary will not approve the sale unless the price equals or exceeds the appraised value and is clearly justified in the light of long-term best interests of the owner.

A noncompetent Indian can, with the approval of the Secretary, purchase trust land and take title in fee. If the Secretary is satisfied that the noncompetent Indian is capable of adequately managing his affairs, he would very probably approve the purchase in fee.[1]

The Secretary approved the applications of the Joseph Shawls and Edward Phares to sell their restricted Indian lands and in accordance with petitioner's request the United States acquired legal title to the parcels which were held in trust for the Shawls and Edward Phares in trust for petitioner. The Bureau of Indian Affairs considered the transfers to be authorized by section 5 of the Act of June 18, 1934 (48 Stat. 984, 25 U.S.C. sec 465).

In view of the fact that we considered the question of the taxability of petitioner's income from grazing cattle on the land he acquired from the Joseph Shawls and the land he acquired from the Werles in exchange for the land he acquired from Edward Phares on the assumption that the acquisition of these lands by petitioner was authorized under the provisions of section 4 and not section 5 of the Act of June 18, 1934, we strike from our Opinion the portion thereof appearing on page 345 and reading as follows:

Section 4 of the Act of June 18, 1934, deals with the limitations on sales, devises, gifts, exchanges or other transfers of "restricted Indian lands, or of shares in the assets of any Indian tribe."[5] This is the only provision in the Act of June 18, 1934, dealing with the transfers of land from a noncompetent Indian. There is nothing in this provision relative to any guarantee of transfer by the United States of land to the assignee of an original allottee free of encumbrance. * * *

[5] Sec. 4 of the Act of June 18, 1934, 48 Stat. 984 reads as follows :

Sec. 4. Except as herein provided, no sale, devise, gift, exchange or other transfer of restricted Indian lands or of shares in the assets of any Indian tribe or corporation organized hereunder, shall be made or approved : *Provided, however,* That such lands or interests may, with the approval of the Secretary of the Interior be sold, devised, or

[1] We have made no findings based on the memorandum from the Commissioner of the Bureau of Indian Affairs to "All Area Directors," since we find it immaterial to the issues herein. The reference to a use of the trust status as a "tax dodge" in that memorandum does not necessarily refer to Federal income tax as distinguished from State taxes and if it did, the opinion of the Commissioner of the Bureau of Indian Affairs as a general matter is not helpful in resolving our issue with respect to specific parcels of land.

otherwise transferred to the Indian tribe in which the lands or shares are located or from which the shares were derived or to a successor corporation; and in all instances such lands or interests shall descend or be devised, in accordance with the then existing laws of the State, or Federal laws where applicable, in which said lands are located or in which the subject matter of the corporation is located, to any member of such tribe or of such corporation or any heirs of such member: *Provided further,* That the Secretary of the Interior may authorize voluntary exchanges of land of equal value and the voluntary exchanges of shares of equal value whenever such exchange, in his judgment, is expedient and beneficial for or compatible with the proper consolidation of Indian lands and for the benefit of cooperative organizations.

Section 5 of the Act of June 18, 1934, under which the Bureau of Indian Affairs considered it had the authority to approve the transfers of the Joseph Shawls and Edward Phares allotments to petitioner provides that the Secretary of the Interior is authorized to acquire through purchase, relinquishment, gift, exchange, or assignment, any interest in lands including trust allotments and that title to any lands so acquired shall be taken in the name of the United States in trust for the individual Indian for which the land is acquired.[2]

While there is nothing specifically stated in section 5 of the Act of June 18, 1934, relative to any guarantee of transfer by the United States of the land to an assignee of the original allottee free of encumbrance, petitioner contends that under the provisions of 25 U.S.C. section 335 [3] the guarantee of the delivery of the land to the Indian free of encumbrance contained in the General Allotment Act of 1887, 24 Stat. 388, 25 U.S.C. sec. 331 *et seq.* (section 5 of the 1887 Act (quoted in footnote 3 of our Opinion) is 25 U.S.C. sec. 348) is made applicable to the land acquired by petitioner from the Joseph Shawls and Edward Phares. Petitioner contends that this guarantee is also carried over to the land petitioner acquired from the Werles in exchange for the Phares parcel. It is clear that 25 U.S.C. section 335 extends many of the provisions of the General Allotment Act of 1887 to "all lands here-

---

[2] Act of June 18, 1934, ch. 576, sec. 5, 48 Stat. 985 (25 U.S.C. sec. 465):

The Secretary of the Interior is hereby authorized, in his discretion, to acquire, through purchase, relinquishment, gift, exchange, or assignment, any interest in lands, water rights, or surface rights to lands, within or without existing reservations, including trust or otherwise restricted allotments, whether the allottee be living or deceased, for the purpose of providing land for Indians.

For the acquisition of such lands, interest in lands, water rights, and surface rights, and for expenses incident to such acquisition, there is authorized to be appropriated, out of any funds in the Treasury not otherwise appropriated, a sum not to exceed $2,000,000 in any one fiscal year: * * *

The unexpended balances of any appropriations made pursuant to this section shall remain available until expended.

Title to any lands or rights acquired pursuant to * * * [this Act] shall be taken in the name of the United States in trust for the Indian tribe or individual Indian for which the land is acquired, and such lands or rights shall be exempt from State and local taxation. [June 18, 1934, ch. 576, sec. 5, 48 Stat. 985.]

[3] 25 U.S.C. sec. 335 (Act of Feb. 14, 1923, 42 Stat. 1246):

Unless otherwise specifically provided, the provisions of sections 331–334, 339, 341, 342, 348, 349, and 381 of this title are extended to all lands heretofore purchased or which may be purchased by authority of Congress for the use or benefit of any individual Indian or band or tribe of Indians. * * *

tofore purchased or which may be purchased by authority of Congress for the use or benefit of any individual Indian." Among the provisions extended to such lands is section 5 of the General Allotment Act of 1887. This section provides that the Secretary of the Interior shall cause patents to lands allotted to individual Indians to issue in the allottee's name, declaring that the United States will hold the land in trust for such Indian and at the expiration of 25 years "will convey the same by patent to said Indian * * * in fee, discharged of said trust and free of all charges or encumbrances whatsoever." We do not agree with petitioner that the requirement that land held in trust by the United States for an individual Indian be delivered free of encumbrances to that Indian, made applicable by 25 U.S.C. sec. 335 to all lands purchased by authority of Congress for Indians, extends to any land except that allotted by the Secretary of the Interior to the Indian. However, we need not rest our conclusion on our interpretation of the Statute in this respect since 25 U.S.C. sec. 335 applies only to land purchased by authority of Congress.

In our view the stipulated facts in this case show that petitioner himself purchased the two parcels of land with which we are here concerned. Petitioner's purchase of these lands was not "by authority of Congress" as that term is used in 25 U.S.C. sec. 335. In our view section 335 is referring to land purchased by the United States for use of Indians and not to land purchased by the Indian himself. Petitioner, with the approval of the Secretary of the Interior, could have taken title to the lands he purchased in fee. Instead he requested that title to these lands be taken by the United States in trust for him. In substance petitioner relinquished his legal title to the United States so that the lands could be held by the United States in trust for him. While section 5 of the Act of June 18, 1934, does require the United States to take title to lands, which the Secretary of the Interior in his discretion acquires by "relinquishment," in trust for the Indian for whom such land is acquired, we find nothing in section 5 of the Act of June 18, 1934, or in 25 U.S.C. sec. 335 which requires that the lands which petitioner purchased from other Fort Belknap allottees with title taken at his request in the name of the United States in trust for him, be, at a future date, delivered to him by the United States free of all encumbrances.

Since upon reconsideration of this case in light of the proper controlling statutes, our conclusion as to the portion of petitioner's income which is not subject to Federal income tax remains unchanged, we will enter a decision in accordance with respondent's recomputation to which petitioner agreed and on which we based the decision entered on August 6, 1969.

*Decision will be entered accordingly.*