EDWARD COMENOUT, JR., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Comenout v. Commissioner
Docket No. 7851-79.
United States Tax Court
T.C. Memo 1982-40; 1982 Tax Ct. Memo LEXIS 707; 43 T.C.M. (CCH) 408; T.C.M. (RIA) 82040; January 29, 1982; As corrected February 8, 1982 Frederick O. Frohmader and Robert E. Scofield, for the petitioner. Thomas N. Tomashek, for the respondent. FEATHERSTON
MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge: Respondent determined deficiencies in and additions to petitioner's Federal income taxes as follows: Additions to Tax
Sec. 6651(a)
Sec. 6653(a)
Year
Deficiency
I.R.C. 1954
I.R.C. 1954
1975
$ 157,698
$ 39,425
$ 7,885
1976
$ 400,447
$ 100,112
$ 20,022
*708 The primary issue for decision is whether certain income received by petitioner, an enrolled member of the Quinault Indian Tribe, is exempt from Federal income taxation. If not, then we must determine (1) the amount of income earned by petitioner during 1975 and 1976 from the sale of tobacco products, and (2) whether petitioner is liable for the additions to tax imposed by sections 6651(a) [1] and 6653(a). FINDINGS OF FACT At the time the petition was filed, petitioner resided in Puyallup, Washington. He did not file a Federal income tax return for 1975 or 1976. Petitioner is a full-blooded, noncompetent, [2] enrolled member of the Quinault Indian Tribe. During 1975 and 1976, he operated a curio shop known as the Indian Country Store (hereinafter sometimes referred to as the "smokeshop") on property for which he held a "restricted title." [3] This property was originally acquired by petitioner's father with money that had been held in trust by the United States for his father's benefit. *709 From August 1975 through December 1976, petitioner retailed cigarettes and other tobacco products in his smokeshop. He purchased these items, for resale to his customers, from two wholesalers-- Service Tobacco Company and Glaser Brothers. In 1977, Revenue Agent Bernard Winter (Winter) was assigned to examine the income tax liability of petitioner for 1975 and 1976. During the examination, Winter contacted petitioner and requested copies of petitioner's income and expense records for the years in question. Petitioner informed Winter that he had no such records because, in petitioner's view, the profits from his smokeshop were nontaxable. Consequently, Winter conducted the examination by reconstructing petitioner's income for 1975 and 1976 based upon information obtained from third parties, including Service Tobacco Company and Glaser Brothers. Winter established the retail prices charged by petitioner for tobacco products through advertisements placed in a newspaper by the Indian Country Store, information obtained from the Washington State Department of Revenue, and information obtained from petitioner's wholesalers. He determined the quantity of such products purchased *710 by petitioner, and their wholesale cost, from records of the wholesalers and the Washington State Department of Revenue. Petitioner believed that the income he received from his smokeshop was exempt from taxation and, therefore, failed to file Federal income tax returns for 1975 and 1976. Respondent determined in the notice of deficiency that petitioner is taxable on income from cigarette sales for 1975 and 1976 in the respective amounts of $ 250,942 and $ 597,904, computed as follows: 1975
1976
Sales
$ 887,041
$ 2,475,419
Less cost of sales
636,099
1,877,515
Gross and net profit
$ 250,942
$ 597,904
Respondent further determined that, for each of the years in question, petitioner is liable for the addition to tax imposed by section 6651(a) for failure to timely file a tax return and the addition to tax under section 6653(a) for negligence or intentional disregard of rules and regulations in the underpayment of taxes. OPINION In broad terms, the Federal income tax applies to "every individual" and "all income from whatever source derived." Secs. 1 and 61. It is well established that the income of Indians, as well as other individuals, is taxable *711 "unless an exemption from taxation can be found in the language of a Treaty or Act of Congress." Commissioner v. Walker,326 F.2d 261, 263 (9th Cir. 1964), affg. in part and revg. in part 37 T.C. 962 (1962), and cases there cited; United States v. Anderson, 625 F.2d 910, 913 (9th Cir. 1980); Fry v. United States,557 F.2d 646 (9th Cir. 1977); Jourdain v. Commissioner,71 T.C. 980, 987 (1979), affd. per curiam 617 F.2d 507 (8th Cir. 1980). [4]
*712 Petitioner contends that, as a noncompetent Indian "living and doing trade on restricted reserved land" [5] under the Treaty with the Qui-Nai-Elts, etc. [Quinault], 12 Stat. 971 (1856) (the Treaty), he is exempt from taxation on the smokeshop income that he received during 1975 and 1976. However, he has not pointed out (nor have we found) any language in the Treaty that expresses an intention to exempt the Quinault Tribe from Federal income taxation. Instead, petitioner focuses on the absence of language in the Treaty with respect to the question of taxation and argues that, by negative implication, he is exempt from taxation on the smokeshop income because "there is no place in the Treaty in which the Indians agree to be taxed or their reserved right of trade to be interfered with." In this connection, he emphasizes that the Treaty placed only two restrictions on the trade rights of the Indian signatories [6] and argues that the United States may not interfere with the otherwise reserved and unrestricted trade rights of the Quinault Tribe by taxing the profits derived from trade on reservation land. *713 We could sustain petitioner's position "only if we could find express exemptive language in some statute or treaty." United States v. Anderson,supra at 913. As noted above, there is no such language in the Treaty. It is true that ambiguities in treaties are to be resolved in favor of Indians, but we are not free to grant, by implication, a tax exemption for petitioner. Mescalero Apache Tribe v. Jones,411 U.S. 145, 156 (1973); Fry v. United States,supra at 649; Jourdain v. Commissioner,supra at 990. We find nothing in the Treaty or in the notes which accompanied its adoption inconsistent with the taxation of petitioner's smokeshop income; such nondiscriminatory taxation may reduce petitioner's retained profits, but it does not interfere with any trade rights that he has under the Treaty. [7] Compare Strom v. Commissioner, 6 T.C. 621, 627-628 (1946), affd. per curiam 158 F.2d 520 (9th Cir. 1947) (taxation of income from commercial fishing business did not burden the right to fish guaranteed in the Treaty with the Quinault Tribe). *714 Petitioner further argues that taxation of noncompetent reservation Indians is prohibited by the Constitution. Under U.S. Const. art. I, sec. 2, cl. 3, and the Fourteenth Amendment, sec. 2, representatives in Congress and direct taxes are to be apportioned on the basis of the number of persons in each State, "excluding Indians not taxed." According to petitioner, the phrase "Indians not taxed" provides a constitutional limitation against taxation of noncompetent reservation Indians. We rejected a similar argument in Jourdain v. Commissioner,supra at 988, where we found that-- The phrase "Indians not taxed," when viewed in context, is clearly descriptive, describing the fact that some Indians are not taxed by the State in which they reside and should, therefore, be excluded from the enumeration of its population [for purposes of apportioning congressional representatives and direct taxes among the States]. It does not restrain the Federal Government from taxing Indians. [Fn. reference omitted.] We hold that petitioner is taxable on his smokeshop income. At issue also is the amount of the smokeshop income received by petitioner in 1975 and 1976. *715 Respondent determined in the notice of deficiency that petitioner received income from cigarette sales during 1975 and 1976 in the amounts of $ 250,942 and $ 597,904, respectively. Petitioner has the burden of proving respondent's determination to be erroneous. Rule 142(a), Tax Court Rules of Practice and Procedure. No evidence was presented by petitioner in this connection. Accordingly, we sustain respondent's determination. The final issue for decision is whether petitioner is liable for the additions to tax imposed by sections 6651(a) and 6653(a). After considering the entire record, we are convinced that petitioner's failure to file income tax returns for 1975 and 1976, and his failure to comply with applicable rules and regulations, was due to a sincere (albeit erroneous) belief that his smokeshop income was exempt from tax under the Treaty. Therefore, we hold that he is not liable for any addition to tax. Compare Jourdain v. Commissioner,supra at 990-991. To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as in effect during the tax years in issue, unless otherwise noted.↩
2. As used here, the term "noncompetent" does not denote mental incapacity, but instead refers to a limited legal disability of petitioner. Petitioner has "restricted title" to certain real property, meaning that he is "noncompetent" to alienate or encumber it without the permission of the Secretary of the Interior. See Stevens v. Commissioner,452 F.2d 741, 742, fn. 1 (9th Cir. 1971), affg. in part and revg. in part 52 T.C. 330 (1969), Supp. Opinion 54 T.C. 351↩ (1970). 3. See footnote 2, supra.↩
4. Relying upon Elk v. Wilkins,112 U.S. 94 (1884), petitioner argues that general acts of Congress such as the Internal Revenue Code "do not apply to Treaty noncompetent Indians." We disposed of this same argument adversely to the noncompetent Indian taxpayer in Jourdain v. Commissioner,71 T.C. 980, 987 (1979), affd. per curiam 617 F.2d 507 (8th Cir. 1980). We there observed that the "rule" of Elk v. Wilkins,supra at 100, that "[g]eneral acts of Congress * * * [do] not apply to Indians, unless so expressed as to clearly manifest an intention to include them," has been modified. See F.P.C. v. Tuscarora Indian Nation,362 U.S. 99, 116↩ (1960), where the Supreme Court stated that "it is now well settled * * * that a general statute in terms applying to all persons includes Indians and their property interests."
5. It is unclear whether the land on which petitioner conducted his business is situated within the boundaries of an Indian reservation. For purposes of this opinion, we assume that, as asserted by petitioner on brief, the "land is treated as reservation land by the United States Government." ↩
6. Art. XI of the Treaty prohibits trade in slaves and art. XII prohibits trade outside the dominions of the United States.↩
7. It is clear that the income in question is not covered by the statutory (the General Allotment Act of 1887, 24 Stat. 388, 25 U.S.C. sec. 331, et seq.) tax exemption construed by the Supreme Court in Squire v. Capoeman, 351 U.S. 1 (1956), for income derived directly from restricted Indian land. See Critzer v. United States,220 Ct. Cl. 43, 597 F.2d 708 (1979); Hoptowit v. Commissioner,↩ 78 T.C.     (Jan. 28, 1982).