HAROLD FARRIS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent.
Farris v. Commissioner
Docket No. 20300-81.
United States Tax Court
T.C. Memo 1985-346; 1985 Tax Ct. Memo LEXIS 292; 50 T.C.M. (CCH) 412; T.C.M. (RIA) 85346; July 15, 1985. Christopher R. Boutelle, for the petitioner. Thomas N. Tomashek, for the respondent. WILBUR
MEMORANDUM OPINION WILBUR, Judge: Respondent determined the following deficiencies in petitioner's Federal income taxes: Year
Deficiency
1977
$14,295
1978
97,134
1979
37,793
The issues for decision are: (1) whether income earned by an enrolled member of the Puyallup Indian Nation from the operation of a smokeshop and gambling casino is subject to Federal income taxation, and (2) whether, assuming the gambling income is taxable, petitioner is entitled to a deduction for the loss of cash and gambling equipment seized by the Federal Bureau of Investigation (F.B.I.). This case was submitted under Rule 122. [1] The stipulation of facts and attached exhibits are incorporated herein by this reference. *294 Petitioner is an enrolled member of the Puyallup Indian Nation. Petitioner resided in Tacoma, Pierce County, Washington, within the boundaries of the Puyallup Indian reservation. When the petition herein was filed, petitioner was the beneficial owner of land held in trust by the United States of America (trust land). [2] Petitioner operated a retail store called the "Indian House" (hereinafter "the smokeshop") that sold tobacco and other merchandise during the years 1977 through 1979. The land upon which the smokeshop is located consists of .38 acres in Pierce County, Washington. The property was deeded by Frank and Lorna LePonis to the United States in trust for petitioner on March 28, 1977. The trust land falls under the jurisdiction of the General Allotment *295 Act of 1887, 24 Stat. 388, 25 U.S.C. section 331, et seq. (1982). The purpose of the legislation was to prevent diminution in the value of trust land until such time as the Secretary of the Interior determines that the individual allottee is competent to hold title to the land in fee simple. Board of Commissioners v. Seber,318 U.S. 705, 715 (1943). In 1977, 1978, and 1979 the fair rental value of the real properly upon which the smokeshop was situated was $7,000 per year. This value is based on the rental value of the land for use in the operation of a smokeshop or other similar commercial endeavor and represents the highest and best use of this particular property. The income shown on the tax return filed by petitioner in 1977 consisted solely of wages earned by petitioner as a butcher for the Hygrade Food Products Corporation in Tacoma, Washington. Petitioner failed to include the income earned in 1977 from his smokeshop and gambling operations conducted on trust land. In addition, petitioner failed to file an income tax return in 1978 and 1979. The net income of the smokeshop for the years in question is as follows: Year
Net Income
1977
$60,604
1978
83,453
1979
81,224
*296 In the notice of deficiency, the Commissioner determined that the smokeshop earnings are includable in petitioner's gross income. Petitioner does not dispute the correctness of the taxable income from his smokeshop operation as determined by respondent for the years 1977, 1978, and 1979, but argues that such income is exempt from Federal taxation. In August of 1977, petitioner and three other individuals opened up a cardroom. This cardroom initially restricted itself to poker games but was later expanded to include blackjack tables and dice games. On April 24, 1978, the gambling operation was closed by the F.B.I. and $75,234.18 in cash and gambling equipment was seized. As stipulated, the income received by petitioner from the gambling enterprise was $24,000 in 1977 and $63,000 in 1978. Petitioner argues that if this Court should find that the gambling income is not exempt from Federal income tax, he should be entitled to a loss deduction to reflect the value of the cash and property seized in the F.B.I. raid. We turn our attention first to whether income earned from petitioner's smokeshop and gambling operation is exempt from Federal income taxation. In a recent Court reviewed *297 opinion, this issue was decided adversely to petitioner. Cross v. Commissioner,83 T.C. 561 (1984), on appeal (9th Cir. June 27, 1985).[3]
Section 61 provides that income from whatever source derived is subject to Federal income taxation. [4] It is now well established that the income of American Indians is subject to Federal taxation "unless an exemption from taxation can be found in the language of a Treaty or Act of Congress." Commissioner v. Walker,326 F.2d 261, 263 (9th Cir. 1964), *298 affg. in part and revg. in part 37 T.C. 962 (1962); Jourdian v. Commissioner,71 T.C. 980 (1979), affd. 617 F.2d 507 (8th Cir. 1980); Hoptowit v. Commissioner,78 T.C. 137 (1982), affd. 709 F.2d 564 (9th Cir. 1983). The mere fact that petitioner is an Indian will not exclude him from liability for Federal income tax. Choteau v. Burnet,283 U.S. 691 (1931); Superintendent v. Commissioner,295 U.S. 418 (1935). In order for petitioner to prevail he must point to a specific exemption from taxation in the language of a treaty or Act of Congress. Where there is a lack of any language with respect to the question of taxation, an exemption can not thereby exist by negative implication. Mescalero Apache Tribe v. Jones,411 U.S. 145, 156 (1973); United States v. Anderson,625 F.2d 910 (9th Cir. 1980); Karmun v. Commissioner,82 T.C. 201 (1984), affd. 749 F.2d 567 (9th Cir. 1984). *299 Petitioner has failed to identify an express exclusion in any treaty or Congressional Act. Thus, we must agree with respondent that the income from the smokeshop as well as from petitioner's gambling operation is taxable under section 61. Petitioner contends that the Medicine Creek Treaty of 1854, 10 Stat. 1132, is the definitive document regulating relations between the United States and the Puyallup Indian Tribe of which petitioner is an enrolled member. Article 12 of the treaty provides that "[t]he said tribes and bands finally agree not to trade at Vancouver's Island or elsewhere out of the dominions of the United States." Petitioner contends that this geographical limitation is the sole trade limitation intended by the parties to the treaty. Thus, petitioner asserts that taxing the income from the smokeshop and gambling operation would be tantamount to an additional trade restraint not sanctioned by the treaty. This Court has previously reviewed the language of the Medicine Creek Treaty of 1854, and the intent of Congress with regard to the taxation of the Puyallup Indians, and has *300 concluded that no treaty or statute exempts petitioner from his liability for Federal income taxation. Cross v. Commissioner,supra at 564-565. The General Allotment Act of 1887, 24 Stat. 388, 25, U.S.C. section 331 et seq. (1982) under which jurisdiction petitioner's trust land falls, similarly fails to exempt petitioner's income from taxation. Squire v. Capoeman,351 U.S. 1, 9 (1956). In Squire, a noncompetent Indian argued that income from the sale of timber growing on land held in trust for him by the United States pursuant to the General Allotment Act was not taxable. The Supreme Court interpreted the Act as exempting the proceeds from taxpayer's timber sales. This exemption, however, was restricted to income "directly derived" from the land itself. In Squire, the sale of the timber decreased the intrinsic value of the land and thereby impaired the capacity of taxpayer-Indian, once declared competent, to survive economically. The cases that have applied *301 the "directly derived" test to exempt income have generally done so only in situations in which the land itself was physically exploited in some manner. [5] Income generated by a taxpayer's personal efforts and activities is not directly derived from trust land merely because such activities are being conducted on that particular parcel. Furthermore, it is not well established that income earned from the retail sales of a smokeshop located on trust land is not within the narrow tax exemption afforded by the General Allotment Act. Cross v. Commissioner,83 T.C. at 566; Hoptowit v. Commissioner,supra;Hale v. United States,579 F. Supp. 646 (E.D. Wash. 1984); Critzer v. United States,220 Ct. Cl. 43, 597 F.2d 708 (1979). *302 The income at issue in this case emanated primarily from petitioner's business activities and his investment in improvements to his trust land. "There is no legal reason why this type of income should escape taxation while all other taxpayers, including Indians who work and operate businesses off the reservation, must pay their fair share of taxes." Critzer v. United States,220 Ct. Cl. at 54, 597 F.2d at 714. Our finding that the smokeshop income is subject to Federal income taxation applies which equal force to petitioner's gambling income. [6]
*303 In the alternative, petitioner argues that the portion of the smokeshop income allocable to the fair rental value of the unimproved land upon which the smokeshop is situated should be exempt from taxation as income "directly derived" from the land within the meaning of Squire v. Capoeman,supra. This argument was carefully considered and rejected by this Court on similar facts in Cross v. Commissioner,supra. See also Hale v. United States,supra.We continue to reject this argument. We now turn to the question of whether petitionwr should be allowed a deduction for the loss of cash and gambling equipment valued at $75,234.18 seized by the F.B.I. In 1977 and 1978 petitioner and several associates operated a casino on Puyallup Indian reservation land. The casino operated without an approval or license from the Washington State Gambling Commission. The gambling operation featured blackjack, poker, and dice games. Petitioner argues that he should be entitled to a deduction under section 165 to reflect his loss. The items seized were later made subject to forfeiture by the Federal Government pursuant to the Organized *304 Crime Control Act of 1970, 18 U.S.C. section 1955 (1982). [7] Respondent contends that no deduction should be permitted because petitioner's conduct is prohibited by statutory enactment and to allow such a decuction would frustrate sharply defined national and state policies. We agree with respondent. *305 The issue is now well settled that the deduction claimed by petitioner, if allowed at all, would be in the nature of a loss deduction under section 165 rather than an ordinary and necessary business expense under section 162. See Fuller v. Commissioner,213 F.2d 102 (10th Cir. 1954), affg. 20 T.C. 308 (1953) (liquor seized by authorities in a dry state presumed to be a loss item); Holt v. Commissioner,69 T.C. 75 (1977), affd. per curiam 611 F.2d 1160 (5th Cir. 1980) (confiscation and forfeiture of assets used in drug trafficking held to be in the nature of losses rather than expenses); Richey v. Commissioner,33 T.C. 272 (1959) (theft of $15,000 cash in scheme to counterfeit treated as a loss item). Section 165(a) allows a deduction for "any loss sustained during the taxable year and not compensated for by insurance or otherwise." In the case of an individual, the deduction is limited to losses incurred in a trade or business or in any transaction entered into for profit. [8] The facts clearly indicate that *306 petitioner was engaged in operating a gambling enterprise as a trade or business for Federal tax purposes. Commissioner v. Sullivan,356 U.S. 27 (1958). Thus, the deduction claimed by the petitioner falls conceptually within the ambit of section 165(a) and 165(c)(1). Nevertheless, these loss deductions must be disallowed for the reasons that follow. Courts have consistently held that a loss deduction will be denied when to allow a deduction would frustrate a sharply defined Federal or state policy. Holmes Enterprises, Inc. v. Commissioner,69 T.C. 114 (1977); Holt v. Commissioner,supra;Fuller v. Commissioner,supra;Mazzei v. Commissioner,61 T.C. 497 (1974); Richey v. Commissioner,supra. In Holt v. Commissioner,supra, the taxpayer sought a loss deduction for property seized by authorities after his arrest for a drug trafficking violation. This Court held that: The *307 primary purpose of such forfeitures is to cripple illegal drug trafficking and narcotics activities by depriving narcotics peddlers of the operating tools of their trade * * *. It would clearly be contrary to public policy to allow a deduction for such forfeitures * * *. * * * The forfeitures, confiscation, fines, and imprisonment of taxpayer are all aimed at stopping illegal drug trafficking * * *. Clearly, it would be contrary to public policy to allow a deduction for the loss by [taxpayer] of his contraband. [Holt v. Commissioner,supra at 80. [9]] *308 Petitioner concedes that losses from illegal transactions are not deductible but argues that his conduct is not prohibited by statutory enactment and thus aid not frustrate sharply defined national or state policies. "[I]t is clear that the question of illegality to frustrate public policy is, in the last analysis, one of degree, to be determined from the peculiar facts of each case." fuller v. Commissioner,supra at 106. The Organized Crime Control Act of 1970, 18 U.S.C. section 1955 (1982) makes it a Federal crime to conduct an "illegal gambling business." The Act defines an "illegal gambling business" as one which violates state law. 18 U.S.C. section 1955(b)(1)(i) (1982). Petitioner asserts that section 1955 cannot apply because at the time of the F.B.I. seizure, the state of Washington had no jurisdiction on Indian trust land. Article II *309 of the Treaty of Medicine Creek, 10 Stat. 1132 (1854) states that reservation land shall be "marked out for * * * [the Indians'] exclusive use." Thus, the traditional rule has been that the state of Washington had no jurisdiction over crimes committed by Indians on Indian trust land. United States v. Farris,624 F.2d 890, 894 (9th Cir. 1980). In 1953, however, Congress delegated to the states some of its authority to regulate affairs on Indian reservations. Act of August 15, 1953, Pub. L. No. 83-280, 67 Stat. 588. Section 7 of this Act gave the State of Washington the Federal consent to assume full criminal jurisdiction over all Indian lands. However, as to acts committed by Indians on Indian land, the state of Washington asserted jurisdiction over only eight subject matter areas. Wash. Rev. Code Ann. section 37.12.010 (Supp. 1974). As petitioner correctly points out, gambling is not among these areas. Notwithstanding the fact that the state of Washington cannot enforce its gambling laws against Puyallup Indians on their reservation, section 37.12.010 of the Revised *310 Code of Washington provides the state with jurisdiction to enforce these laws against non-Indians, even while on reservation land. Wash. Rev. Code Ann. sec. 37.12.010, supra. Therefore, we agree with the Court of Appeals in Farris that petitioner's activity does constitute a "violation of the law of a state" for purposes of 18 U.S.C. section 1955, due to the fact that petitioner's non-Indian associates were subject to state prosecution for their part in the operation of the gambling enterprise: Washington public policy prohibits the type of gambling business conducted by [taxpayer] * * *. Therefore, for the purposes of the federal statute, their business was a "violation of the law of a State * * * in which it is conducted." The policy underlying section 1955 is that large-scale gambling is dangerous to federal interests wherever it occurs. * * * [United States v. Farris,supra at 895.] Petitioner argues on brief that he should be allowed a loss deduction because he did not knowingly enter into an illegal activity. This argument is wholly without merit because, as stated above, the Court of Appeals conclusively determined *311 that both state and Federal laws were violated by virtue of petitioner's gambling operations. United States v. Farris,supra.To allow petitioner a deduction for losses arising out of these illegal activities would undermine public policy by permitting his violation to be subsidized by the Federal tax laws. Courts have consistently held that a loss deduction will be disallowed where to allow the deduction would frustrate national and state governmental policies. In this case petitioner violated a Federal statute proscribing certain gambling activities. To allow the convicted wrongdoer to mitigate the economic loss caused by the seizure and forfeiture of contraband would controvert the goals of the Organized Crime Control Act of 1970, and effectively force the Government to underwrite a portion of the costs incurred by petitioner in his illegal gambling enterprise. Losses resulting from the conduct of illegal activities must be assumed by the taxpayer and should not be borne by the Federal fisc. Thus, we find the confiscation and forfeitures to result in losses *312 not allowable under section 165. [10]
*313 To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Petitioner is "noncompetent" in that he has restricted title to this property. This means that petitioner is not entitled to alienate or encumber the land without the permission of the Secretary of the Interior. See Stevens v. Commissioner,452 F.2d 741, 742 n. 1 (9th Cir. 1971), affg. in part and revg. in part 52 T.C. 330 (1969), supplemental opinion 54 T.C. 351↩ (1970).
3. Cf. Wilbur v. Commissioner,T.C. Memo. 1984-576; Davis v. Commissioner,T.C. Memo. 1984-574; Landry v. Commissioner, T.C. Commissioner,T.C. Memo. 1984-574; Landry v. Commissioner,T.C. Memo. 1984-575; Gord v. Commissioner,T.C. Memo. 1984-517, on appeal (9th Cir. Dec. 21, 1984); Swiger v. Commissioner,T.C. Memo. 1984-228; Comenout v. Commissioner,T.C. Memo. 1982-40, affd. without published opinion 746 F.2d 1484↩ (9th Cir. 1984).
4. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect for the years in issue.↩
5. Stevens v. Commissioner,452 F.2d 741 (9th Cir. 1971), affg. in part and revg. in part 52 T.C. 330 (1969), supplemental opinion 54 T.C. 351 (1970) (Income from farming and ranching is tax exempt); United States v. Daney,370 F.2d 791 (10th Cir. 1966) (Income from oil and gas leases is tax exempt); Hayes Big Eagle, et al. v. United States,156 Ct. Cl. 665, 300 F.2d 765↩ (1962) (Royalties from mineral deposits are tax exempt).
6. Petitioner's additional arguments questioning the applicability of taxing statutes and the constitutional power of Congress to tax Indians are without merit. Cross v. Commissioner,83 T.C. 561, 566, n. 9 (1984), on appeal (9th Cir. June 27, 1985). Petitioner's reliance on Elk v. Wilkins,112 U.S. 94 (1884), is unsupported and controverts the great weight of authority supporting the proposition that general legislative acts of Congress including the Federal income tax do apply to Indians. F.P.C. v. Tuscarora Indian Nation,362 U.S. 99 (1960); Squire v. Capoeman,351 U.S. 1 (1956); Jourdain v. Commissioner,71 T.C. 980 (1979), affd. 617 F.2d 507 (8th Cir. 1980). Petitioner also argues erroneously that the phrase "Indians not taxed", found in the U.S. Constitution (Art. I. sec. 2, cls. 3 and Amend. 14, sec. 2), refers to taxation of Indians by the United States. It is however, well settled that "Indians not taxed" refers solely to the taxation of American Indians by the states. This phrase is thus not to be construed to circumscribe the taxing power of the United States. Cross v. Commissioner,supra;Jourdian v. Commissioner,supra;Comenout v. Commissioner,T.C. Memo. 1982-40, affd. without published opinion 746 F.2d 1484↩ (9th Cir. 1984).
7. The Organized Crime Control Act of 1970, 18 U.S.C. sec. 1955 (1982) states: Sec. 1955. Prohibition of illegal gambling businesses (a) Whoever conducts, finances, manages, supervises, directs, or owns all or part of an illegal gambling business shall be fined not more than $20,000 or imprisoned not more than five years, or both. (b) As used in this section-- (1) "illegal gambling business" means a gambling business which-- (i) is a violation of the law of a State or political subdivision in which it is conducted; (ii) involves five or more persons who conduct, finance, manage, supervise, direct, or own all or part of such business; and (iii) has been or remains in substantially continuous operation for a period in excess of thirty days or has a gross revenue of $2,000 in any single day. * * * (d) Any property, including money used in violation of the provisions of this section may be seized and forfeited to the United States. * * *↩
8. Sec. 165 also applies to certain casualty losses. Sec. 165(c)(3)↩.
9. In Hopka v. United States,195 F. Supp. 474, 483 (N.D. Iowa, 1961), the court disallowed a deduction with regard to slot machines seized by the authorities in a state in which solt machines were illegal. Taxpayer was engaged in the business of owning, operating, and maintaining these machines. In disallowing the loss deduction the court held that-- While under the Iowa law the forfeiture of slot machines under the statute referred to did not constitute a fine or penalty, it seems clear that the forfeiture proceedings provided for in that statute are intended as a sanction calculated to induce compliance with the Iowa statute forbidding the use or ownership of slot machines and that they do constitute a "sting" for the violation of Iowa law * * * a deduction which if allowed would reduce the "sting" of state law as to acts unlawful under the state law is regarded as frustrating state policy.↩
10. Petitioner also alleges that he is improperly being taxed on money which was seized as part of the proceeds from his gambling operation. In Commissioner v. Sullivan,356 U.S. 27 (1958), the Supreme Court stated that a gambling enterprise is a business for Federal tax purposes. The Court held that ordinary and necessary business expenses involved in operating the enterprise were allowable. The Court stated that to deny such deductions would result in taxing the gross receipts of the business rather than its net income. The notion of allowing legitimate expenses incurred in the operation of an illegitimate enterprise is not relevant on our facts because we are dealing with a confiscation and forfeiture which we have determined does not qualify for an expense deduction under sec. 162. In Holt v. Commissioner,69 T.C. 75 (1977), affd. per curiam 611 F.2d 1160 (5th Cir. 1980), respondent allowed a credit on taxes due for cash seized when taxpayer was arrested on Federal drug violations. Respondent reasoned that such a credit was allowable because the Federal statute involved in that case failed to provide for the forfeiture of cash after conviction on drug trafficking charges. Holt v. Commissioner,supra at 78. In contrast, the statute authorizing forfeiture of petitioner's assets in the instant case expressly provides that "[a]ny property, including money, used in violation of the provisions of this section may be seized and forfeited to the United States * * *." 18 U.S.C. sec. 1955(d) (1982)↩ (emphasis added).