T.C. Memo. 1998-202

UNITED STATES TAX COURT

JOE T. KIEFFER AND LINDA R. KIEFFER, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 9404-96.                          Filed June 2, 1998.

Joe T. Kieffer and Linda R. Kieffer, pro sese.

<u>Gregory M. Hahn</u> and <u>Christal W. Hillstead</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

DEAN, <u>Special Trial Judge</u>:  This case was heard pursuant to
section 7443A(b)(3) and Rules 180, 181, and 182.[1]  Respondent
determined deficiencies in petitioners' Federal income taxes for
the taxable years 1993 and 1994 in the amounts of $1,873 and

_____

[1]Unless otherwise indicated, all section references are to
the Internal Revenue Code in effect for the taxable years in
issue.  All Rule references are to the Tax Court Rules of
Practice and Procedure.

$1,509, respectively and accuracy-related penalties in the amounts of $375 and $302, respectively.

The issues for decision are whether petitioners' income from the sale of lumber by petitioner Joe T. Kieffer (petitioner) is exempt from income tax and whether petitioners are liable for the accuracy-related penalty under section 6662. If we find that the income from lumber sales is subject to income tax, the parties agree that petitioners are entitled to trade and business expense deductions in the amounts of $11,214 in 1993 and $6,954 in 1994, and self-employment tax deductions in the amounts of $427 in 1993 and $265 in 1994.

All of the facts are stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by reference. Petitioners resided in Fruitland, Washington, at the time their petition was filed.

## Background

In 1993 and 1994 petitioners were and currently are enrolled members of the Spokane Indian Tribe (tribe). Petitioner was self-employed in 1993 and 1994. He harvested diseased timber on the tribal reservation pursuant to a tribal permit allowing him to conduct such activity. Reservation land was and continues to be land not allotted to individual Indians.

Petitioner transported the timber he harvested on reservation land to "his property" where it was cut into lumber.

The property where petitioner cut the timber into lumber was and remains reservation land not allotted to an individual Indian. The lumber petitioner produced was sold to Spokane Indian Reservation Timber Products Enterprises (SIRTPE). In 1993, petitioner had lumber sales of $17,253 to SIRTPE and in 1994 his sales to SIRTPE were in the amount of $10,699. Petitioner incurred lumber sales expenses of $11,214 in 1993 and $6,954 in 1994.

On their joint individual Federal income tax returns filed for 1993 and 1994, petitioners did not report income or expenses from lumber sales. Attached to the return for 1993 is a Form 1099-MISC reporting nonemployee compensation from SIRTPE bearing the handwritten notation, "Indian Exempt".

## Discussion

Respondent takes the position that petitioners must report as income receipts from lumber sales and are allowed to deduct expenses associated with such sales for both years. Petitioners argue that "income derived by an Indian from activities which directly benefit the Tribe is tax-exempt." Petitioners argue also that income derived by an Indian from a "natural resource" on Indian reservation land is, by analogy to section 7873, exempt from income tax.

We start from the premise that every item of a person's gross income is subject to Federal income tax, unless there is a

statute or some rule of law that exempts the person or the item from gross income. HCSC-Laundry v. United States, 450 U.S. 1, 5 (1981). Tax exemptions, including those affecting native peoples, are not granted by implication. If Congress intends to exempt certain income, it must do so expressly. Earl v. Commissioner, 78 T.C. 1014, 1017 (1982); Lazore v. Commissioner, T.C. Memo. 1992-404, affd. in part and revd. in part 11 F.3d 1180 (3d Cir. 1993).

It is well established that American Indians are subject to Federal income taxation unless an exemption exists in the language of a treaty or an Act of Congress. Squire v. Capoeman, 351 U.S. 1, 6 (1956); United States v. Willie, 941 F.2d 1384, 1400 (10th Cir. 1991); Cross v. Commissioner, 83 T.C. 561, 564 (1984), affd. sub nom. Dillon v. United States, 792 F.2d 849 (9th Cir. 1986).

Petitioners do not point to any treaty provision which they allege exempts their tribal lands from taxation and we are unable to find such a provision. See Northern Pac. Ry. Co. v. Wismer, 246 U.S. 283 (1918) (describes an "agreement" between the Spokane Tribe of Indians, the Department of the Interior, and the Department of War). The only "Act of Congress" referred to by petitioners is section 7873.

Under section 7873, income derived by a member of an Indian tribe "directly or through a qualified Indian entity" from a

"fishing rights-related activity of such tribe" is not subject to income tax.  For purposes of section 7873, income derived from "fishing rights-related activity" means income derived from activity "directly related" to harvesting, processing, transporting, or selling fish in the exercise of recognized fishing rights of an Indian tribe.  Sec. 7873(b).  Petitioners' income from lumber sales is not income derived from Indian fishing-rights-related activity and is not exempt under the statute.  See Warbus v. Commissioner, 110 T.C. ___ (1998).

Petitioners' argument, however, is that the intent of Congress, as expressed by the protection of Indian fishing-rights-related activity under section 7873, "should also apply to timber harvested and processed within the boundaries of the Spokane Indian Reservation."  A similar issue has been addressed and resolved contrary to petitioners' position.

Petitioners' lumber sales income is, arguably, income derived from Indian land, which under some circumstances is exempt from income tax.  In Squire v. Capoeman, supra, it was held that income from allotted lands upon which a patent[2] had not been issued is not subject to income tax.  The Court concluded that a Federal income tax exemption was created by the Indian General Allotment Act of 1887 (General Allotment Act), ch. 119,

---

[2]The term "patent" as used here refers to an allotment certificate.  See Monson v. Simonson, 231 U.S. 341, 345-346 (1913).

24 Stat. 388, 25 U.S.C. sec. 331-358 (1998) for income that an individual Indian allottee derives directly from the land held in trust for him.  The Court reasoned that there existed a congressional intent to exempt allotted lands from all charges and encumbrances until after the fee interest was conveyed to the individual allottee.  It held that income received by a noncompetent[3] Indian from the sale of standing timber logged off of his own allotment was exempt from Federal income tax.

In Fry v. United States, 557 F.2d 646 (9th Cir. 1977), Indian taxpayers contracted with a non-Indian concern to cut timber from unallotted lands of an Indian reservation.  The taxpayers argued that their logging income should not be subject to tax since the income that the tribe itself received from the logging was not subject to tax, citing Squire v. Capoeman, supra, and Stevens v. Commissioner, 452 F.2d 741 (9th Cir. 1971), affg. in part, revg. in part 54 T.C. 351 (1970).  The opinion of the Ninth Circuit Court of Appeals in the Fry case pointed out that there was no treaty or statute that exempted the tribal lands in question from Federal income taxation.  It also stated that, "In both Squire and Stevens, the income which was held to be exempt

---

[3]The trust under which the United States holds the allotted lands makes the individual allottee "noncompetent" to alienate it without permission of the United States.  The term "noncompetent" "does not denote mental incapacity."  Stevens v. Commissioner, 452 F.2d 741, 742 n.1 (9th Cir. 1971), affg. in part, revg. in part 52 T.C. 330 (1969).

to the allottee was from operations conducted on his own allotted land."  Fry v. United States, supra at 648.  Another factor cited by the court was the taxpayers' failure to show that their income met the Squire test of being derived "directly" from the land as opposed to being derived from a contract.

Petitioners argue that, but for the fact that the taxpayers in Fry v. United States, supra, did not earn their income directly from the land as required by Squire v. Capoeman, supra, the taxpayers would have prevailed.  Petitioners' argument was addressed in United States v. Anderson, 625 F.2d 910 (9th Cir. 1980).  The issue there was whether the income a noncompetent Indian derived from cattle ranching under a tribal license on land held in trust by the United States for other Indians and for the tribe was subject to Federal income taxation.  The court in Anderson found that the rationale of the Squire v. Capoeman, supra, case was:

> if an Indian's allotted land (or the income directly derived from it) was taxed, and the tax was not paid, the resulting tax lien on the land would make it impossible for him to receive the land free of 'incumbrance' at the end of the trust period. * * * By contrast, 'taxation of the taxpayer's individual profit derived from his lease of tribal [or other allottees' trust] land cannot possibly represent a burden or encumbrance upon the tribe's [or other  allottees'] interest in such land.' Citing Holt v. Commissioner, 364 F.2d 38, 41 (8th Cir. 1966), affg. 44 T.C. 686 (1965).  [United States v. Anderson, supra, at 914].

The Court of Appeals for the Ninth Circuit held in Anderson that the General Allotment Act provides no tax exemption for the

income a noncompetent Indian derives from other Indians' or his tribe's trust land. Accord Holt v. Commissioner, 44 T.C. 686 (1965), affd. 364 F.2d 38 (8th Cir. 1966).

Contrary to the argument petitioners urge us to adopt, "Policy alone cannot support a federal tax exemption in the absence of express exemptive language in a statute or treaty." United States v. Anderson, supra at 917. Petitioners earned income from logging pursuant to a tribal permit on trust land and lumber sales to the tribe. Petitioners were not allottees and did not derive income from sales of lumber produced from timber on their own allotted lands. Petitioners' income from lumber sales is not income derived from Indian fishing-rights-related activity and is not income that is exempt under any treaty provision. Petitioners' lumber sales income is not exempt from Federal income tax.

Respondent determined that a section 6662 accuracy-related penalty is due with respect to both of petitioners' tax returns for 1993 and 1994. Section 6662 imposes a penalty equal to 20 percent of the portion of the underpayment attributable to negligence or disregard of rules or regulations. Sec. 6662(a) and (b)(1). Negligence is defined as any failure to make a reasonable attempt to comply with the provisions of the Internal Revenue Code, and the term "disregard" includes any careless, reckless, or intentional disregard. Sec. 6662(c).

The accuracy-related penalties will apply unless petitioners demonstrate that there was reasonable cause for the under-payments and that they acted in good faith with respect to the underpayments.  Sec. 6664(c).  Whether a taxpayer acted with reasonable cause and good faith depends on the pertinent facts and circumstances.  McCallson v. Commissioner, T.C. Memo. 1993-528; sec. 1.6664-4(b)(1), Income Tax Regs.  Petitioners must show that they were not negligent.  Cluck v. Commissioner, 105 T.C. 324, 339 (1995).

Petitioners failed to produce any evidence to show that they were not negligent for either of the years at issue.  They have failed to carry their burden of proof.  We sustain respondent's determination that they are liable for the accuracy-related penalty for 1993 and 1994.

To reflect the foregoing,

Decision will be entered

for respondent.